A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
Telephone:  (406) 256-8155
Facsimile:  (406) 256-8159

Bruce A. Americus *(Pro Hac Vice)*
Matthew F. Burger *(Pro Hac Vice)*
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone:  (412) 562-8800

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC, | Case Number: CV 12-55-BLG-RFC |
| Plaintiff, | |
| vs. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AMENDED COUNTERCLAIMS FILED BY SIGNAL PEAK ENERGY, LLC; FIRSTENERGY CORP.; FIRSTENERGY VENTURES CORP., FIRSTENERGY GENERATION CORP., BOICH COMPANIES, LLC; WMB MARKETING VENTURES, LLC; GLOBAL COAL SALES GROUP, LLC; and GLOBAL MINING HOLDING COMPANY, LLC** |
| EASTERN MONTANA MINERALS, INC., and MUSSELSHELL RESOURCES, LLC, | |
| Defendants and Counterclaim Plaintiffs, | |
| vs. | |
| SIGNAL PEAK ENERGY, LLC; FIRSTENERGY CORP.; FIRSTENERGY VENTURES CORP.; FIRSTENERGY GENERATION CORP.; GUNVOR GROUP, LTD.; | |

PINESDALE LLC; BOICH
COMPANIES, LLC; WMB
MARKETING VENTURES, LLC;
GLOBAL COAL SALES GROUP,
LLC; and GLOBAL MINING
HOLDING COMPANY, LLC,

              Counterclaim Defendants.

## INTRODUCTION

EMM's[1] Response to the Motions to Dismiss filed by the Counterclaim Defendants ("Defendants") is short on actual facts and long on surmise and conjecture.  EMM hopes that by creating out of whole cloth a tale of trickery and schemes, it can convince this Court to allow the case to proceed predominantly as a tort action against multiple parties with no connection to Montana or the Coal Lease.  Doing so would only enable EMM to conduct a fishing expedition – masquerading as legitimate discovery – into the internal business activities of numerous companies wholly unrelated to this action.  Rules 8(a), 9(b), 12(b)(2), 12(b)(6), and the *Iqbal/Twombly* pleading standards are designed to prevent this from happening.

This case is a straightforward contractual dispute as to the basis for Royalty payments under the Coal Lease between EMM and SPE.  There is no legal basis to expand this case to include third parties that are not parties to the Coal Lease or to include Counts for alleged torts based purely on conclusory allegations.  Dismissing all of the extraneous claims and parties will in no way prejudice EMM.  The gravamen of each of its tort claims is that it will not receive the Royalties to which it is entitled.  SPE brought this action to determine just that and if EMM

---

[1] All capitalized terms shall have the meanings ascribed to them in Defendants' various Motions to Dismiss and supporting Memoranda filed on July 26, 2012.

prevails on its contract and declaratory judgment claims against SPE, it will be made whole.

In addition, EMM has utterly failed to establish any connection between the State of Montana on the one hand, and Boich, WMB, FE, FEV, or Global Holding on the other. EMM has failed to demonstrate that exercising personal jurisdiction over Boich, WMB, FE, FEV, or Global Holding would not deprive these parties of due process of law.

In the end, the motivation for all of EMM's Counterclaims is greed. This Court should not validate EMM's avarice by letting baseless Counterclaims go forward.

## LEGAL ARGUMENT[2]

A. <u>SPE Has Produced Every Document that EMM is Entitled to Receive.</u>

As a preliminary matter, EMM repeatedly makes the false assertion that SPE is somehow withholding documents to which EMM has rightful access under the Coal Lease. Nothing could be further from the truth; EMM has received every document it is entitled to under the Coal Lease's audit provision. EMM seeks to

---

[2] Where Defendants do not address EMM's arguments, they respectfully refer this Court to the arguments set forth in their July 26, 2012 filings.

expand the scope of its audit right as a way to engage in discovery for this lawsuit, which is beyond improper.[3]

### B. EMM's Fraud Claim Relies on Conclusory Allegations, Cites Inapposite Case Law, and Highlights the Contractual Nature of the Dispute.

In trying to deflect attention from its threadbare collection of allegations, EMM repeatedly makes the bare allegation that it has met the pleading requirements of Rules 8(a) and 9(b).  Thus, in response to Defendants' argument that EMM has merely pleaded conclusory allegations rather than actual supporting facts, EMM makes more conclusory allegations.  For instance, in response to SPE's argument that Count Three (Fraud) fails to meet Rule 9(b)'s heightened pleading standard, EMM points to its summary allegation in the Counterclaims that SPE "has knowingly and falsely represented to EMM, . . . that the prices at which coal is ultimately sold by SPE to third parties reflect arms' length transactions." Response, p. 11.  EMM's entire fraud claim is a pile of conclusory statements stacked upon each other.  This does not pass Rule 8(a) scrutiny, much less Rule 9(b) scrutiny.

EMM also cites entirely inapposite case law.  For the proposition that "circumstantial evidence of fraud is sufficient to survive a motion to dismiss," it cites a Ninth Circuit opinion applying California law and involving a district

---

[3] Defendants also note the impropriety of EMM pleading facts in support of its baseless "stonewalling" argument through its brief rather than through a pleading.

court's post-trial rulings, which found that a party can show fraudulent intent through circumstantial evidence. *Id.* at 13 (citing *Cable & Computer Tech. Inc. v. Lockheed Sanders Inc.*, 52 F. Appx. 22 (9th Cir. 2002)).  Then, in support of EMM's assertion that "pleading requirements can be relaxed where evidence is exclusively within defendant's possession," it cites a case that rejects that position. Response, p. 14 (citing *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010)) (refusing to relax the pleading standard).  Thus, EMM's entire argument that this Court should apply a "reduced measure of particularity" is premised on a Ninth Circuit opinion rejecting that very theory.

Moreover, any reasonable review of the pleadings and EMM's Memorandum reveals that this case is a genuine dispute between EMM and SPE concerning the interpretation of the Coal Lease and that the dispute between them is contractual in nature, not tortious.

### C. EMM's Other Non-Contract Claims Merely Reassert Conclusory Allegations from the Complaint and Rely on Irrelevant Case Law.

EMM's Memorandum highlights just how feeble its non-contract claims are. When this Court limits its review, as it must, to "the facts of the Complaint, materials incorporated into the Complaint by reference, and matters of judicial notice," it becomes clear that actual facts are rarities in EMM's Counterclaims. *Montana Caregivers Assoc., LLC v. United States*, No. CV 11-74M-DWM, 2012 WL 169771, at *2 (D. Mont. Jan. 20, 2012) (citing *N.M. St. Inv. Council v. Ernst &*

4

*Young*, 641 F.3d 1089, 1094 (9th Cir. 2011)).  In their stead, EMM provides speculation and conjecture.  EMM's arguments suffer from two fatal flaws:  (1) as with the fraud claim, they merely reassert conclusory allegations from the Counterclaims; and (2) they cite to either no case law or to irrelevant case law.  With no facts to point to in the Counterclaims and no relevant case law in support, EMM's causes of action against non-parties to the Coal Lease fail as a matter of law.

### D. **The Tortious Interference Claim is Legally Insufficient.**

EMM's argument regarding the supposed relaxed pleading standard for tortious interference claims relies heavily on an opinion that pre-dates *Iqbal* and *Twombly*.  Response, p. 15 (citing *Colstrip Energy Ltd. P'ship v. Thomason Mech. Corp.*, No. CV-03-150-BLG-RFC, 2006 WL 6843711 (D. Mont. Oct. 30, 2006)).  Because *Colstrip Energy* was decided pre-*Twombly*, the pleading standard applied there allows for dismissal "only where it appears, beyond a doubt, that the plaintiff can prove no set of facts that would entitle her to relief." *Id.* at *1.  By its own terms, then, *Colstrip Energy* proves irrelevant to this Court's resolution of the tortious interference claim.

EMM then spends five pages arguing that Count Four, as pleaded, meets the *Iqbal* and *Twombly* pleading standards, yet fails to cite a single case in support of its argument.  Response, pp. 16-20.  Instead, EMM merely regurgitates the

5

elements of a tortious interference claim, and then half-heartedly argues that those allegations are sufficient to survive Rule 8(a).  As with its fraud claim, EMM pleads more conclusory allegations to shore up its pleading weaknesses, even though such efforts are futile.

Finally, EMM's argument that Defendants "cannot have it both ways" is a red herring.  Response, p. 21.  Essentially, EMM argues that a defendant must be subject to either a breach of contract claim or a tortious interference claim; it should not be allowed to wiggle out of both claims.  EMM's argument is based on the faulty premise that if a plaintiff goes to the trouble of suing a defendant, then the defendant must be liable for something.  Unfortunately for EMM, unless a plaintiff can plead actual facts setting forth why it has a legal cause of action against a defendant, its suit is frivolous and warrants dismissal.

### E.     The Unjust Enrichment Claim Should Be Dismissed.

EMM's unjust enrichment claim is the epitome of an "unadorned, the-defendant-unlawfully-harmed-me accusation" that fails to meet Rule 8(a).  *Iqbal*, 556 U.S. at 678.  EMM purports to state a claim against nine Defendants over the span of three sentences.[4]  Counterclaims ¶¶ 110-112.  EMM offers no response to Defendants' argument that this claim constitutes a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" and is

---

[4] Defendants welcome EMM's admission that it has no unjust enrichment claim against SPE.  *See* Response, p. 21 n. 6.

therefore insufficient under Rule 8(a). *Iqbal*, 556 U.S. at 678. EMM's non-response effectively concedes the legal insufficiency of its unjust enrichment claim.

### F. The Civil Conspiracy Claim Fails as a Matter of Law.

EMM offers nothing in response to Defendants' argument that no civil conspiracy can exist if the object of an alleged "conspiracy" is lawful, even where damage may result to plaintiffs. *Duffy v. Butte Teachers Union, No. 332, AFL-CIO*, 541 P.2d 1199, 1202 (Mont. 1975). Instead, EMM cites *Flagstone Dev., LLC v. Joyner*, No. CV-08-100-BLG-RFC, 2010 WL 4286341 (D. Mont. Oct. 19, 2010), for the proposition that a defendant's actions are "rendered unlawful because [a] plaintiff allege[s] that they were done in furtherance of tortiously interfering" with an agreement. Response, p. 25. *Flagstone* stands for nothing of the sort. It makes no judgment on the legality of any particular kind of conduct. EMM has therefore failed to contradict Defendants' accurate statement of Montana law or to meet the *Iqbal*/*Twombly* pleading standard, and in addition, has failed to plead a valid underlying tort claim.

### G. The Court Does not Have Personal Jurisdiction Over FE, FEV, Global **Holding, Boich or WMB.**

#### 1. **EMM has failed to make a *prima facie* showing of specific jurisdiction over any of these Defendants.**

EMM contends that this Court may exercise specific jurisdiction over FE, FEV, Global Holding, Boich, and WMB based on EMM's vague and conclusory assertions of minimum contacts.[5]  EMM is wrong.

Courts within the Ninth Circuit use a three-part test to determine if they can exercise specific personal jurisdiction:  (1) "the non-resident defendant must *purposefully direct his activities* or consummate some transaction *with the forum or resident thereof*"; (2) "the claim must be one which arises out of or relates to the defendant's *forum-related activities*"; and (3) the exercise of jurisdiction must be reasonable.  *See Fiore v. Walden*, --- F.3d ---, 2012 WL 3194464 (9th Cir. Aug. 8, 2012) (emphasis in original) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  EMM bears the burden of satisfying prongs (1) and (2).  Because EMM has failed to meet either prong, specific personal jurisdiction cannot be established.[6]

---

[5] EMM concedes that general jurisdiction does not exist over these Defendants.

[6] Because of EMM's inability to meet its initial burden, Defendants need not demonstrate that the exercise of jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802 (noting that the burden shifts to defendants only after a plaintiff satisfies the first two prongs).

8

FE, FEV, Global Holding, Boich, and WMB did not purposefully direct any activities at Montana. For tort claims, the Ninth Circuit applies a three-part test derived from *Calder v. Jones*, 465 U.S. 783 (1984), to determine if purposeful direction is present. Under this test, EMM must demonstrate that each of these Defendants: (1) committed an intentional act; (2) expressly aimed at the forum state; and (3) caused harm, the brunt of which was suffered and which the defendant knows is likely to be suffered in the forum state. *Ukrvaktsina v. Olden Group, LLC*, No. 10-6297, 2011 WL 5244679 (D. Or. Oct. 30, 2011). Each Defendant's contacts with the forum "must be assessed individually." *Calder*, 465 U.S. at 790. Further, "an allegation that a particular defendant caused or contributed to an effect in the forum state, by itself, is insufficient, even if it is foreseeable that the defendant's conduct would have an effect in the forum." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 650 F. Supp. 2d 1118, 1140 (D. Nev. 2010) (citation omitted).

EMM has failed to plead, much less prove, that FE, FEV, Global Holding, Boich or WMB committed an intentional act aimed at Montana. Rather, EMM simply continues its improper practice of making conclusory allegations and treating ten separate entities as a collective unit. *See, e.g.*, Response at 32, 41. EMM has not demonstrated that each Defendant chose "to direct [its] activities at

9

the forum."[7]  *Ukrvaktsina*, 2011 WL 5244697, at *9 (citation omitted).  Further, because EMM has failed to introduce any evidence of purposeful activities directed toward Montana by FE, FEV, Global Holding, Boich or WMB, it obviously cannot establish that its claims "arise out of" any such activities.

        2.      <u>EMM cannot save its claims by imputing the contacts of other Defendants to FE, FEV, Global Holding, Boich or WMB.</u>

In a tacit admission that it cannot demonstrate purposeful direction by each Defendant, EMM urges this Court to exercise jurisdiction based on a conspiracy theory.  Under this theory, a conspirator's in-forum acts are attributed to its co-conspirators for purposes of establishing jurisdiction.

Montana has never adopted this theory of jurisdiction.  EMM nevertheless urges the Court to apply this theory because other courts have adopted it.  Response, p. 34 n.7.  Yet none of the cases EMM cites apply Montana law and, significantly, no federal court in this circuit has adopted the theory.

In fact, the Ninth Circuit has not adopted the conspiracy theory of jurisdiction, and district courts within this circuit routinely deny plaintiffs' attempts to circumvent due process through application of the theory.  *See, e.g., Steinke v. Safeco Ins. Co. of Am.*, 270 F. Supp. 2d 1196, 1200 (D. Mont. 2003) ("This Court

---

[7] In fact, EMM and MR are Delaware entities with principal places of business in Greenwich, CT.  EMM cannot show that it suffered harm in Montana:  not only are all notices under the Coal Lease sent to EMM in Greenwich, but all Royalty payments are sent to a JP Morgan Chase account in New York City.

has never recognized the conspiracy theory of jurisdiction, nor has the Ninth Circuit, nor has the Montana Supreme Court."); *Ecodisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1089 (C.D. Cal. 2010) (rejecting the conspiracy theory of jurisdiction); *Ukrvaktsina*, 2011 WL 5244679, at *9 ("[S]ince no court within this . . . circuit has accepted the conspiracy theory as a valid basis of personal jurisdiction, this Court declines to do so."). This Court should decline to adopt a theory that has never been recognized by the Ninth Circuit or the Montana Supreme Court.

Moreover, as set forth in Defendants' Opening Memoranda and again herein, EMM has alleged no facts to even suggest an actionable conspiracy among the Defendants. "The cases are unanimous that a bare allegation of a conspiracy between a defendant and a person within the personal jurisdiction of the court is not enough." *Chirila v. Conforte*, 47 F. Appx. 838, 843 (9th Cir. 2002) (citation omitted). Thus, even if the conspiracy theory were the law of this circuit – and it is not – EMM could not establish specific personal jurisdiction on that basis. *Id.* (affirming dismissal for lack of personal jurisdiction where plaintiff's conspiracy claim was "made in the most conclusory manner"); *Undewager v. Channel 9 Australia*, 69 F.3d 361, 364 (9th Cir. 1995) (same).

### 3. Agency and alter ego theories do not support specific personal jurisdiction over FE or Boich.

EMM's assertions that jurisdiction may be exercised over FE and Boich[8] based on an agency or alter ego theory are likewise without merit.

A "parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). To demonstrate that SPE is the alter ego of either FE or Boich, EMM must "establish a prima facie case that the two companies share such unity of interest and ownership that the companies' separateness no longer exists and failure to disregard their separate identities would result in fraud or injustice." *In re Western States*, 650 F. Supp. 2d at 1132 (citation omitted). EMM has not even attempted to demonstrate a unity of interest warranting disregard of corporate separateness. EMM simply cannot show that FE or Boich so closely control SPE as to render SPE a "mere instrumentality" of either company.

Likewise, EMM cannot establish that SPE acts as the general agent for either company within Montana. Courts will not impute a subsidiary's forum-related contacts to a parent simply because the parent holds a company as an investment. *Id.* at 1135. Rather, the plaintiff must demonstrate that the subsidiary's presence in the forum substitutes for the parent. *Id.* EMM cannot show that SPE's activities

---

[8] Boich has no legal connection with any of the other Defendants.

are sufficiently important to FE's or Boich's business that, absent SPE's operation of the Mine in Montana, FE and Boich would have undertaken the operations themselves. Accordingly, EMM's assertions of general agency fail.

### 4. Jurisdictional Discovery is Not Warranted.

Jurisdictional discovery is appropriate only where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Ukrvaktsina*, 2011 WL 5244697, at *10 (citation omitted). Because of the due process concerns inherent in a motion to dismiss for lack of personal jurisdiction, a plaintiff is required to make at least a "colorable showing of [personal] jurisdiction" to warrant such discovery. *Id.* This standard requires that a plaintiff come forward with at least "some evidence tending to establish personal jurisdiction over the defendant." *Id.* (quotation omitted). EMM has failed to meet even this modest standard.

### CONCLUSION

For the foregoing reasons, this case should proceed as a contractual dispute between the two parties to the Coal Lease, and Defendants request that all Counterclaims asserted against them be dismissed, except Counts 1, 2, and 9 against SPE. EMM has already been given the opportunity to amend; since its Counterclaims continue to be legally insufficient, they should be dismissed with prejudice.

DATED this 29th day of August, 2012.

/s/ A. Clifford Edwards
A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
Telephone:  (406) 256-8155
Facsimile:  (406) 256-8159

Bruce A. Americus *(Pro Hac Vice)*
Matthew F. Burger *(Pro Hac Vice)*
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone:  (412) 562-8800

*Attorneys for Counterclaim Defendants Signal Peak Energy, LLC*; *FirstEnergy Corp.*; *FirstEnergy Ventures Corp.*; *FirstEnergy Generation Corp.*; *Boich Companies, LLC*; *WMB Marketing Ventures, LLC*; *Global Coal Sales Group, LLC*; and *Global Mining Holding Company, LLC*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(d)(2)(e) of the U.S. District Court for the District of Montana, I certify that this document is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Word is 2,975.

Dated this 29th day of August, 2012.

/s/ A. Clifford Edwards
A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
Telephone:  (406) 256-8155
Facsimile:  (406) 256-8159

Bruce A. Americus *(Pro Hac Vice)*
Matthew F. Burger *(Pro Hac Vice)*
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone:  (412) 562-8800

*Attorneys for Counterclaim Defendants Signal Peak Energy, LLC*; *FirstEnergy Corp.*; *FirstEnergy Ventures Corp.*; *FirstEnergy Generation Corp.*; *Boich Companies, LLC*; *WMB Marketing Ventures, LLC*; *Global Coal Sales Group, LLC*; and *Global Mining Holding Company, LLC*