James H. Goetz
GOETZ, GALLIK & BALDWIN, P.C.
35 North Grand Avenue
P.O. Box 6580
Bozeman, MT 59771-6580
Ph:  (406) 587-0618
Fax:  (406) 587-5144
E-mail:  jim@goetzlawfirm.com

Banks Brown, *Admitted Pro Hac Vice*
Michael J. Dillon, *Admitted Pro Hac Vice*
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10017
Ph:  (212) 547-5400
Fax:  (212) 547-5444
E-mail:  bbrown@mwe.com
         mdillon@mwe.com

**Attorneys for Counterclaim Defendant Gunvor Group, Ltd.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA,
## BILLINGS DIVISION

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EASTERN MONTANA MINERALS, INC., and MUSSELSHELL RESOURCES, LLC,<br><br>Defendants. | Case No.  CV 12-55-BLG-RFC<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GUNVOR GROUP LTD.'S MOTION TO DISMISS AMENDED COUNTERCLAIMS** |

EASTERN MONTANA MINERALS,
INC., and MUSSELSHELL
RESOURCES, LLC,

               Counterclaim Plaintiffs,

                    v.

SIGNAL PEAK ENERGY, LLC;
FIRSTENERGY CORP.;
FIRSTENERGY VENTURES CORP.;
FIRSTENERGY GENERATION
CORP.; GUNVOR GROUP, LTD.;
PINESDALE LLC; BOICH
COMPANIES, LLC; WMB
MARKETING VENTURES, LLC;
GLOBAL COAL SALES GROUP,
LLC; and GLOBAL MINING
HOLDING COMPANY, LLC,

               Counterclaim Defendants.

## PRELIMINARY STATEMENT

EMM's[1] *Response In Opposition To Counterclaim Defendants' Motions To Dismiss* ("Opposition" or "Opp.") attempts to defend its pleading. Neither that Opposition nor EMM's improper supporting affidavit and exhibits attached thereto[2] cure the fatal defects. This Court does not have personal jurisdiction over Gunvor, and EMM's allegations that Gunvor (a) tortiously interfered with EMM's contracts or business, (b) conspired to tortiously interfere with EMM's contracts or business, or (c) was unjustly enriched, <u>all</u> fail to meet the federal pleading standard.[3]

---

[1] All capitalized terms and acronyms shall have the meanings ascribed to them in Gunvor's Motion to Dismiss filed with this Court on July 26, 2012.

[2] To the extent that EMM offers the Dwyer Affidavit and its exhibits to buttress its allegations and rebut Pinesdale's Rule 12(b)(6) motion, the submission should be disregarded. *Guschausky v. Am. Family Life Assurance Co. of Columbus*, No. CV 10-59-H-DWM, 2011 U.S. Dist. LEXIS 49973, at *4 (D. Mont. May 10, 2011) ("A pleader must allege enough facts showing it is 'plausible' that she is entitled to relief…The court may not, however, consider factual allegations 'outside' the complaint."); *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (same).

[3] Where Gunvor does not address EMM's arguments, it respectfully requests this Court to refer to Gunvor's arguments set forth in its Motion to Dismiss filed on July 26, 2012.

## ARGUMENT

### A.   <u>This Court Lacks Personal Jurisdiction Over Gunvor</u>

EMM's pleading <u>must</u> make a prima facie showing of "general" or "specific" personal jurisdiction <u>specifically over Gunvor</u> in order to survive. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). But the portion of EMM's Counterclaims that addresses jurisdiction is silent as to the Court's personal jurisdiction over Gunvor. Counterclaims, ¶¶ 13-15. EMM unsuccessfully argues that its collective allegations evidence personal jurisdiction over Gunvor. Opp. at 40.

### 1.   **The Court Cannot Exercise "General Jurisdiction" Over Gunvor**

EMM does not suggest that the Court has "general jurisdiction" over Gunvor, a Cyprian company, not present in Montana. *First Nat'l Bank v. Federal Leasing, Inc.*, 618 F. Supp. 491, 493 (D. Mont. 1985). Rather, EMM contends that the Court *does* have "general jurisdiction" over Gunvor's indirect subsidiary, Signal Peak, and hence over Gunvor because – EMM asserts – Gunvor is either the "alter ego" of Signal Peak, or Signal Peak is the "agent" of Gunvor. Opp. at 46.

To establish jurisdiction on an "alter ego" basis, EMM must allege that Gunvor exerts such control over Signal Peak as to render it a mere instrumentality of the former, and that disregard of this control would result in fraud or injustice. *Unocal*, 248 F.3d at 926. EMM has not alleged *any* facts to infer Gunvor's "control" over Signal Peak sufficient to provide jurisdiction. *Id.* at 926-27; *see*

*also Hando v. PPG Indus., Inc.*, 771 P.2d 956, 960 (Mont. 1989) (explaining "alter ego" factors under Montana law). EMM merely asserts that "[e]ach member of the SPE control-group has acknowledged that its respective subsidiary is merely a corporate shell." Opp. at 35. However, nothing in the Counterclaims illustrates such an acknowledgment by Gunvor. Likewise, Gunvor's alleged indirect investment in Signal Peak does not show that Gunvor is Signal Peak's "alter ego," and/or that Gunvor "conducts business in Montana." Opp. at 37. The existence of a parent-subsidiary relationship – or an investment – is insufficient to establish personal jurisdiction. *Unocal*, 248 F.3d at 925. Nor does EMM's assertion that Gunvor "must approve the hiring of key mining executives, can veto big financial transactions and is a co-guarantor on a credit extension" (Opp. at 45) advance the ball. Appropriate parental involvement – *i.e.*, monitoring of a subsidiary's performance, supervision of the subsidiary's financial decisions, and acting as a guarantor on loans for the subsidiary – is perfectly consistent with a parent's investor status. *Id.* at 925-28; *see also U.S. v. Bestfoods*, 524 U.S. 51, 69 (1998).

EMM also does not make a prima facie showing of "control" of Signal Peak through Pinesdale. EMM conclusorily asserts that Pinesdale can be "equated" with

3

Gunvor (Opp. at 20);[4] and then argues that because Gunvor had knowledge of "facts pertaining to Pinesdale;" and that because "Pinesdale was formed less than one month prior to the Gunvor Transaction," this means that "Gunvor and Pinesdale are essentially one and the same."[5]  None of these so-called "facts" are found in the Counterclaims, and cannot support an inference that Gunvor and Pinesdale are "alter egos" in any event.

Finally, EMM does not allege, as it must, <u>facts</u> that suggest that the corporate forms of Gunvor, Pinesdale and Signal Peak are being used as "a subterfuge to defeat public convenience, to justify wrong, or perpetrate fraud." *Flemmer v. Ming*, 190 Mont. 403, 409 (1980).  Instead, EMM conclusorily asserts these propositions.

EMM's agency theory also fails.  To make out personal jurisdiction on an "agency" basis, EMM must allege that Signal Peak was "either established for

---

[4] EMM's argument is, apparently, that Gunvor absolutely "controls" Pinesdale, and Gunvor and Pinesdale together absolutely "control" Signal Peak.  But both the Counterclaims and the Opposition are silent as to *how* either entity "controls" Signal Peak – rather, EMM just insists that they do.

[5] EMM also argues that because Gunvor did not challenge EMM's improper attempt at service on Gunvor through Pinesdale, this suggests Gunvor's "control" over Pinesdale.  Opp. at 36, n.8.  However, EMM's subsequent service of Gunvor in Cyprus took place prior to Gunvor's filing of a Rule 12 motion.  Thus, EMM's improper attempts to first serve Gunvor through Pinesdale were (and are) a moot point, with no significance.

[Gunvor], or is engaged in, activities that, but for the existence of [Signal Peak], the parent would have to undertake itself." *Unocal*, 248 F.3d at 928.  Additionally, EMM must show that the principal *actually* controls the agent, or that the two have "manifest[ed] assent to the principal's right to control the agent." *U.S. v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010).

EMM has not alleged that in the absence of Signal Peak's involvement in coal mining in Montana, Gunvor would conduct those activities.  Where a plaintiff alleges only that a defendant "indirectly owns or holds the stock of" subsidiaries, this "does not, without more, convert [the subsidiary] into general agents . . . for jurisdictional purposes." *Unocal*, 248 F.3d at 930.  Gunvor is a holding company for an international trading group – it does not operate coal mines, as Signal Peak does.  Further, the relationship of parent-subsidiary, and holding company to a subsidiary, are distinct, and the latter does not merit the imputation of the subsidiary's jurisdiction up the chain on an "agency" basis. *Id.* at 929.

EMM has also not alleged Gunvor's "control" of Signal Peak for purposes of jurisdiction via "agency," and again confuses the *involvement* of a parent with

actual or agreed-upon control.   EMM's bare assertion that Gunvor controls or supervises Signal Peak does not confer jurisdiction on an agency basis.  *Id.* at 930.[6]

### 2.    The Court Cannot Exercise "Specific Jurisdiction" Over Gunvor

EMM accurately states the three-part inquiry utilized in the 9th Circuit to determine specific jurisdiction over foreign entities (Opp. at 32), but has not shown that Gunvor is subject to jurisdiction under this test – *i.e.*, that the causes of action arises out of or are substantially related to some Gunvor activity in Montana. *Unocal*, 248 F.3d at 923.

### a.    EMM's Conspiracy Theory Does Not Confer Specific Jurisdiction Over Gunvor

EMM urges the Court to accept the "conspiracy theory" of personal jurisdiction, arguing that a "growing number of courts around the country have recognized the conspiracy theory as satisfying the Due Process Clause."  Opp. at 34, n.7.  But EMM elides that the Ninth Circuit has expressed that "[t]here is a great deal of doubt surrounding the legitimacy of this conspiracy theory of personal jurisdiction."  *Chirila v. Conforte*, 47 Fed. Appx. 838, 842 (9th Cir. 2002).

---

[6] EMM cites *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011) as authority that Gunvor "controls" Signal Peak, but omits that in *Bauman* a comprehensive written agreement served as a manifestation of mutual assent to the principal's control.  There is no such evidence here.

EMM also omits that the district courts in the Ninth Circuit have rejected the theory. *See, e.g., Steinke v. Safeco Ins. Co. of Am.*, 270 F. Supp. 2d 1196, 1200 (D. Mont. 2003) (stating that neither the Ninth Circuit, Montana district courts or Montana Supreme Court recognize the conspiracy theory of jurisdiction); *Karsten Mfg. Corp. v. U.S. Golf Ass'n*, 728 F. Supp. 1429, 1434 (D. Ariz. 1990); *Ecodisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp.2d 1074, 1089 (C.D. Cal. 2010); *Ukrvaktsina v. Olden Group, LLC*, No. 10-6297, 2011 WL 5244679, at *9 (D. Or. Oct. 30, 2011).

Further, "[t]he cases [that have discussed this theory] are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough" to establish a conspiracy theory basis for personal jurisdiction. *Chirla*, 47 Fed. Appx. at 843. Even if the theory applied here, EMM "must allege <u>specific</u> facts warranting the inference that the defendants were members of the conspiracy, and come forward with some definite evidentiary facts to connect <u>the defendant</u> with transactions occurring in [the forum state]." *Mansour v. Superior Court*, 38 Cal. App. 4th 1750, 1759-60 (Cal. Ct. of App. 4th Dist. 1995) (emphasis added). "[T]o establish such jurisdiction requires more than mere allegations that defendants operate as a business association." *Steinke*, 270 F. Supp. 2d at 1200 (emphasis added).

EMM offers no such facts concerning Gunvor, and only asserts that the alleged conspiracy was "wholly-centered in Montana and directed at Montana;" that the "efforts" to deprive EMM of royalties were "centered in Montana;" and that Montana was the "locus of the conspiracy." Opp. at 34-35, 39. But these are conclusions not found in the pleading, and are unsupported by what *is* alleged in the pleading. All EMM *has* alleged is an investment for profit by Gunvor, through Pinesdale, in Global Holding – all foreign companies – which transaction is not alleged to have occurred in Montana, and which agreement is not alleged to be governed by Montana law. No jurisdictional ground is established.

### b.  EMM Has Not Shown That Gunvor Has Purposefully Availed Itself Of The Forum Or That Its Claims Arise Out Of Such Activities

Because EMM's claims against Gunvor lie in tort, it must specifically show Gunvor's "purposeful direction" at Montana by demonstrating that Gunvor 1) committed an intentional act; 2) which was expressly aimed at the forum state; and 3) which caused harm, the brunt of which was suffered and which Gunvor knows is/was likely to be suffered in the forum state. *Ukrvaktsina*, 2011 WL 5244679, at *12. Notably, "[a]n allegation that a particular defendant caused or contributed to an effect in the forum state, by itself, is insufficient, even if it is foreseeable that the defendant's conduct would have an effect in the forum." *In re*

*Western States Wholesale Natural Gas Antitrust Litigation*, 605 F. Supp. 2d 1118, 1139-40 (D. Nev. 2010) (citation omitted).  EMM fails this test.

EMM argues that its pleadings show that Gunvor "hold[s itself] out as conducting business in Montana" (Opp. at 32), but neither support this contention. These only permit the inference that Gunvor has represented that it invested in a foreign company that holds Signal Peak (*i.e.*, Global Holding); and that it has an agreement to buy coal mined by Signal Peak.  These are not "acts" by which Gunvor has purposefully availed itself of the protections and benefits of Montana.[7]

EMM further argues that Gunvor "knew [it was] interfering with the Coal Lease," and that Signal Peak "would be called to answer for its breaches in Montana."  Opp. at 41.  But these are just more conclusory assertions that presume some illicit scienter of Gunvor – highlighting (again) the house of cards that are EMM's claims against Gunvor.  At bottom, EMM's deficient pleading concerning specific personal jurisdiction mirrors that in *Unocal*, wherein no jurisdiction could lie over the foreign corporation who had, in like fashion, not purposefully availed

---

[7] An alleged coal purchase agreement does not mean Gunvor has directed activity at Montana.  *See, e.g., Bell Paper Box v. Trans Western*, 53 F.3d 920, 922 (8th Cir. 1995) (purchase contract with forum resident where nonresident defendant is buyer insufficient for specific personal jurisdiction).

itself of the protections of the forum. 248 F.3d at 924 (citing factors); *see also*
*McGlinchey v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (same).

Because EMM has failed to introduce this requisite evidence of purposeful
activities directed toward Montana *by Gunvor*, it obviously cannot establish that its
claims "arise out" any such activities. As such, EMM fails to establish specific
personal jurisdiction over Gunvor.

### c. The Exercise Of Specific Jurisdiction Over Gunvor Would Be Unreasonable

Even if the Court were to find that EMM's pleading has satisfied the first
two prongs of "the Schwarzenegger test" (Opp. at 32), Gunvor should not – simply
by virtue of an alleged investment in Global Holding and an alleged contract to
buy coal – be "haled into [a Montana court] solely as a result of random, fortuitous
or attenuated contacts . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79
(1985). This would be unreasonable. *Fed. Leasing*, 618 F. Supp. at 494. As
described above, Gunvor has not "purposefully interjected" itself into Montana.
*Id.* Additionally, the burden on Gunvor, a Cyprian company, to defend in Montana
is substantial. *Id.* at 495. There is also a significant conflict with the sovereignty
of Montana in the case of Gunvor, a Cyprian company, made more profound given
the absence of Gunvor's contacts with Montana. *Id.* Because the remaining
factors are not dispositive of jurisdiction here – just as in *Fed. Leasing* – it would
be similarly unreasonable to exercise jurisdiction over Gunvor. *Id.* at 495-496.

### 3.  Jurisdictional Discovery Is Not Warranted

EMM's inadequate pleading and arguments do not justify expensive and time-consuming discovery of Gunvor, a foreign entity. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (refusal of jurisdictional discovery appropriate where plaintiffs "state only that they 'believe' discovery will enable them to demonstrate sufficient" contacts with forum for personal jurisdiction); *Pebble Beach Co. v. Caddy*, 453 F.3d 11511, 1160 (9th Cir. 2006) (attenuated, bare allegations of jurisdiction do not merit discovery); *accord Unocal*, 248 F.3d at 924.  EMM's loose allegations of "stonewalling" do not change this principle – those allegations are not levied at Gunvor.

## B.  EMM Fails to State A Claim For Tortious Interference Against Gunvor

The Opposition attempts to explain how the pleadings have shown "something more than facts which, at the most, would breed only a suspicion that [EMM] has the right to relief . . ." *Laeupple v. May*, No. DV-08-166, 2009 Mont. Dist. LEXIS 52, at *3 (D. Mont. Jan. 8, 2009) (emphasis added).  But EMM's <u>conclusions</u> do not show that the actions of Gunvor were "intended" to specifically injure EMM, and were conducted with the "unlawful" purpose of causing damage to EMM "without right or justification."  Tortious interference cannot be inferred from the fact of a legitimate investment, or from EMM's conclusory statements that the transaction was "unlawful," or "designed" to injure EMM.  *Taylor v.*

*Anaconda Fed. Credit Union*, 550 P.2d 151, 154 (1976) ("malice" is "an essential element" of this tort, and cannot be "presumed and cannot be inferred from the commission of a lawful act"); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (conclusions are disentitled to the presumption of truth).[8]

Moreover, *if* the Court were to disregard the corporate forms, and presume Gunvor's "control" of Signal Peak, then Gunvor could not have interfered with the Lease because Gunvor and Signal Peak would not be "strangers" to that contract. In other words, if the Court has jurisdiction over Gunvor because, as EMM asserts, Signal Peak is merely the "shell" of Gunvor, then Gunvor is not a stranger to the Lease and a tortious interference claim must fail because it may only be committed by strangers to the contract. *Bolz v. Myers*, 651 P.2d 606, 609 (Mont. 1982).

## C.   **EMM Fails to State A Claim For Civil Conspiracy Against Gunvor**

Having failed to state a claim for tortious interference against Gunvor, EMM's conspiracy claim fails as well. *Hughes v. Pullman*, 36 P.3d 339, 343 (Mont. 2001) (conspiracy claim requires a valid underlying tort claim). No other tort claim is asserted against Gunvor.

---

[8] EMM relies on *Colstrip Energy Ltd. P'ship v. Thomason Mech. Corp.*, No. CV-03-150-BLG-RFC, 2006 WL 6843711 (D. Mont. Oct. 30, 2006), to advance its argument for a relaxed pleading standard for tortious interference claims. However, *Colstrip* was decided before *Twombly*, and is therefore irrelevant to the analysis of EMM's tortious interference claim.

EMM's conspiracy claim also fails because the alleged object of the alleged "conspiracy" was lawful – an investment for profit by Gunvor, effected by lawful means.    Even if the transactions were effected to also avoid higher royalty payments to EMM, this is not "unlawful."   No action for civil conspiracy lies where the defendants' actions were lawful. *Duffy v. Butte Teachers Union, N. 332, AFL-CIO*, 541 P.2d 1199, 1202 (Mont. 1975).   EMM's *ipse dixit* that Gunvor's actions are "patently unlawful," (Opp. at 25), is not enough. *Lovaas v. U.S. Forest Serv.*, No. CV-07-72-BU-SHE, 2008 WL 3187793, at *2 (D. Mont. Aug. 6, 2008).

## D.   **EMM Fails To State A Claim For Unjust Enrichment Against Gunvor**

EMM has not made a prima facie showing that states a claim for unjust enrichment in Montana. *Bell Builders, Inc. v. Bell Enterprises Partnership*, No. DV-00-648, 2002 Mont. Dist. LEXIS 2747, at *15 (D. Mont. Apr. 3, 2002) (reciting elements of unjust enrichment).

Again, EMM offers only its conclusion that Gunvor, specifically, has "retain[ed] portions of the royalties owed to EMM." Opp. at 22.  Moreover, EMM has not shown "an absence of a justification for the enrichment and the impoverishment."   Indeed, EMM cannot make this showing – the conduct of Gunvor was entirely justified by a lawful goal (*i.e.*, to invest and make money).

EMM also ignores that it *has* a legal remedy for its claim of diminished royalties – the only injury it has articulated.  EMM contends that its Lease with

Signal Peak is irrelevant to the unjust enrichment claim against Gunvor, and that *Guschausky* does not stand for the principle that that "there can be no unjust enrichment claim where a contract governs the dispute."  Opp. at 23.  But EMM incorrectly argues that the *Guschausky* court  limited its interpretation to instances where there was a contract "between the parties"  (*Id.* at 23); and also incorrectly argues that *McKesson HBOC, Inc. v. N.Y.S. Common Ret. Fund, Inc.*, 339 F.3d 1087, 1092 (9th Cir. 2003), contradicts *Guschausky*.  In *McKesson*, the court simply found that application of the *Guschausky* principle to an unjust enrichment claim under Delaware law would "re-write Delaware third-party beneficiary law." *Id.*  In fact, *McKesson* is more fairly read as "recognizing that an equitable remedy is unnecessary where a legal remedy for the same wrong is available under state law, even if against a different party."  *Stratton v. Am. Med. Security, Inc.*, 266 F.R.D. 340, 354 (D. Ariz. 2009).  This is exactly the point – EMM has an adequate remedy at law via the resolution of its dispute with Signal Peak.

## CONCLUSION

For the foregoing reasons, Gunvor requests that the Counterclaims against it be dismissed, with prejudice.

DATED this 29th day of August, 2012.

_____/s/ James H. Goetz_____
GOETZ, GALLIK & BALDWIN, P.C
**Attorney for Counterclaim Defendant**
**Gunvor Group, Ltd.**

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2) of the Federal Rules of Civil Procedure, the undersigned certifies that the word count calculated by Word is 3,239 words (including footnotes and excluding the caption and Certificates of Service and Compliance).

DATED this 29th day of August, 2012.


_____/s/ James H. Goetz_____
GOETZ, GALLIK & BALDWIN, P.C.
**Attorney for Counterclaim Defendant**
**Gunvor Group, Ltd.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on August 29, 2012, a copy of the foregoing document was

served on the following persons by the following means:

<u>1-9</u>         CM/ECF
\_\_\_\_         Hand Delivery
\_\_\_\_         Mail
\_\_\_\_         Overnight Delivery Service
\_\_\_\_         Fax
\_\_\_\_         E-Mail

1.    Ross W. McLinden, Esq.
     MOULTON BELLINGHAM PC
     27 N. 27th Street, Ste. 1900
     Billings, MT 59103
     **Attorney for Defendants and Counterclaim Plaintiffs Eastern Montana Minerals, Inc. and Musselshell Resources, LLC**

2.    Christopher R. Belmonte, Esq.
     SATTERLEE STEPHENS BURKE & BURKE LLP
     230 Park Avenue
     New York, New York 10169
     **Attorney for Defendants and Counterclaim Plaintiffs Eastern Montana Minerals, Inc. and Musselshell Resources, LLC**

3.    Dai Wai Chin Feman, Esq.
     SATTERLEE STEPHENS BURKE & BURKE LLP
     230 Park Avenue
     New York, New York 10169
     **Attorney for Defendants and Counterclaim Plaintiffs Eastern Montana Minerals, Inc. and Musselshell Resources, LLC**

4.     A. Clifford Edwards, Esq.
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
**Attorney for Plaintiff and Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC**

5.     Triel D. Culver, Esq.
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
**Attorney for Plaintiff and Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC**

6.     A. Christopher Edwards, Esq.
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
**Attorney for Plaintiff and Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC**

7.     John W. Edwards, Esq.
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
**Attorney for Plaintiff and Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC**

8.  Bruce A. Americus, Esq.
    BUCHANAN INGERSOLL & ROONEY PC
    One Oxford Centre, 20th Floor
    301 Grant Street
    Pittsburgh, PA 15219
    **Attorney for Plaintiff and Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC**

9.  Matthew F. Burger, Esq.
    BUCHANAN INGERSOLL & ROONEY PC
    One Oxford Centre, 20th Floor
    301 Grant Street
    Pittsburgh, PA 15219
    **Attorney for Plaintiff and Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC**


                                    _____/s/ James H. Goetz_____
                                    GOETZ, GALLIK & BALDWIN, P. C.