James H. Goetz
GOETZ, GALLIK & BALDWIN, P.C.
35 North Grand Avenue
P.O. Box 6580
Bozeman, MT 59771-6580
Ph:  (406) 587-0618
Fax:  (406) 587-5144
E-mail:  jim@goetzlawfirm.com

Banks Brown, *Admitted Pro Hac Vice*
Michael J. Dillon, *Admitted Pro Hac Vice*
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10017
Ph:  (212) 547-5400
Fax:  (212) 547-5444
E-mail:  bbrown@mwe.com
         mdillon@mwe.com

**Attorneys for Counterclaim Defendant Pinesdale LLC**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA,
## BILLINGS DIVISION

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EASTERN MONTANA MINERALS, INC., and MUSSELSHELL RESOURCES, LLC,<br><br>Defendants. | Case No. CV 12-55-BLG-RFC<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PINESDALE LLC'S MOTION TO DISMISS AMENDED COUNTERCLAIMS** |

EASTERN MONTANA MINERALS, INC., and MUSSELSHELL RESOURCES, LLC,

Counterclaim Plaintiffs,

v.

SIGNAL PEAK ENERGY, LLC; FIRSTENERGY CORP.; FIRSTENERGY VENTURES CORP.; FIRSTENERGY GENERATION CORP.; GUNVOR GROUP, LTD.; PINESDALE LLC; BOICH COMPANIES, LLC; WMB MARKETING VENTURES, LLC; GLOBAL COAL SALES GROUP, LLC; and GLOBAL MINING HOLDING COMPANY, LLC,

Counterclaim Defendants.

## PRELIMINARY STATEMENT

EMM's[1] *Response In Opposition To Counterclaim Defendants' Motions To Dismiss* ("Opposition" or "Opp.") attempts to defend its pleading. Neither that Opposition nor EMM's improper supporting affidavit or exhibits attached thereto[2] cure the fatal defects.  This Court does not have personal jurisdiction over Pinesdale, and EMM's allegations that Pinesdale (a) tortiously interfered with EMM's contracts or business, (b) conspired to tortiously interfere with EMM's contracts or business, or (c) was unjustly enriched, <u>all</u> fail to meet the federal pleading standard.[3]

---

[1] All capitalized terms and acronyms shall have the meanings ascribed to them in Pinesdale's Motion To Dismiss and supporting Memorandum filed with this Court on July 26, 2012.

[2] To the extent that EMM offers the Dwyer Affidavit and its exhibits to buttress its allegations and rebut Pinesdale's Rule 12(b)(6) motion, the submission should be disregarded.  *Guschausky v. Am. Family Life Assurance Co. of Columbus*, No. CV 10-59-H-DWM, 2011 U.S. Dist. LEXIS 49973, at *4 (D. Mont. May 10, 2011) ("A pleader must allege enough facts showing it is 'plausible' that she is entitled to relief…The court may not, however, consider factual allegations 'outside' the complaint."); *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (same).

[3] Where Pinesdale does not address EMM's arguments, it respectfully requests this Court to refer to Pinesdale's arguments set forth in its Motion to Dismiss and supporting Memorandum filed on July 26, 2012.

## ARGUMENT

**A.**   **This Court Lacks Personal Jurisdiction Over Pinesdale**

EMM's pleading <u>must</u> make a prima facie showing of "general" or "specific" personal jurisdiction <u>specifically over Pinesdale</u> in order to survive. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).   But the portion of EMM's Counterclaims that addresses jurisdiction is silent as to the Court's personal jurisdiction over Pinesdale.   Counterclaims, ¶¶ 13-15.   EMM now unsuccessfully argues that its collective allegations evidence personal jurisdiction over Pinesdale.  Opp. at 40.

### 1.   The Court Cannot Exercise "General Jurisdiction" Over Pinesdale

EMM does not suggest that the Court has "general jurisdiction" over Pinesdale, a Delaware LLC with its sole member a Swiss company, which is not present in Montana.  *First Nat'l Bank v. Federal Leasing, Inc.*, 618 F. Supp. 491, 493 (D. Mont. 1985).  Rather, EMM contends that the Court *does* have "general jurisdiction" over Pinesdale's indirect subsidiary, Signal Peak, and hence over Pinesdale because – EMM asserts – Pinesdale is either the "alter ego" of Signal Peak, or Signal Peak is the "agent" of Pinesdale.  Opp. at 46.

To establish jurisdiction on an "alter ego" basis, EMM must allege that Pinesdale exerts such control over Signal Peak as to render it a mere instrumentality of the former, and that disregard of this control would result in

fraud or injustice. *Unocal*, 248 F.3d at 926. EMM has not alleged *any* facts to infer Pinesdale's "control" over Signal Peak sufficient to provide jurisdiction. *Id.* at 926-27; *see also Hando v. PPG Indus., Inc.*, 771 P.2d 956, 960 (Mont. 1989) (explaining "alter ego" factors under Montana law). Pinesdale's alleged indirect investment in Signal Peak does not show that Pinesdale is Signal Peak's "alter ego," and/or that Pinesdale "conducts business in Montana." Opp. at 37. The mere existence of a parent-subsidiary relationship – or an investment – is insufficient to establish personal jurisdiction. *Unocal*, 248 F.3d at 925.

Nor has EMM alleged any facts sufficient to show Gunvor's "control" of Pinesdale, such that the purported actions of Gunvor (*e.g.*, Gunvor's alleged control of Signal Peak) might somehow be imputed to Pinesdale.[4] EMM merely asserts that "[e]ach member of the SPE control-group has acknowledged that its

---

[4] EMM's Counterclaims are largely devoid of *any* factual allegations specifically identifying Pinesdale. Rather, EMM has alleged in conclusory fashion that Gunvor and Pinesdale are one-in-the-same, but has failed to allege facts that support this conclusion. *See, e.g., Hando*, 771 P.2d at 960; *Stutts v. De Dietrich Group*, 465 F.Supp.2d 156, 163 (2d Cir. 2006) (describing degree of parental control needed for jurisdiction over a foreign parent). However, EMM's pleading *still* fails to state claims against Gunvor for the reasons set forth in Gunvor's Motion to Dismiss and supporting Memoranda filed July 26 and August 30, 2012 ("Gunvor's Motion"), respectively. To the extent that the Court accepts EMM's allegations that Pinesdale is the "corporate shell" of Gunvor such that "piercing the corporate veil" is appropriate here, Pinesdale respectfully requests that the Court incorporate herein by reference any additional arguments advanced in Gunvor's Motion.

respective subsidiary is merely a corporate shell." Opp. at 35. However, nothing in the Counterclaims illustrates such an acknowledgment by Gunvor. Likewise, EMM conclusorily asserts that Pinesdale can be "equated" with Gunvor (Opp. at 20); and then argues that because Gunvor had knowledge of "facts pertaining to Pinesdale;" and that because "Pinesdale was formed less than one month prior to the Gunvor Transaction," this means that "Gunvor and Pinesdale are essentially one and the same."[5] None of these so-called "facts" are found in the Counterclaims, and even if they were, they cannot support an inference that Gunvor and Pinesdale are "alter egos." Further, the pleading is silent as to how Gunvor and Pinesdale somehow jointly "controlled" Signal Peak.

Finally, EMM does not allege, as it must, <u>facts</u> that suggest that the corporate forms of Gunvor, Pinesdale and Signal Peak are being used as "a subterfuge to defeat public convenience, to justify wrong or perpetrate fraud." *Flemmer v. Ming*, 190 Mont. 403, 409 (1980). Instead, EMM conclusorily asserts these propositions.

---

[5] EMM also argues that because Gunvor did not challenge EMM's improper attempt at service on Gunvor through Pinesdale, this suggests Gunvor's "control" over Pinesdale. Opp. at 36, n.8. However, EMM's subsequent service of Gunvor in Cyprus took place prior to Gunvor's filing of a Rule 12 motion. Thus, EMM's improper attempts to first serve Gunvor through Pinesdale were (and are) a moot point, with no significance.

EMM's agency theory also fails.  To make out personal jurisdiction on an "agency" basis, EMM must allege that Signal Peak was "either established for [Pinesdale], or is engaged in activities that, but for the existence of [Signal Peak], the parent would have to undertake itself." *Unocal*, 248 F.3d at 928.  Additionally, EMM must show that the principal *actually* controls the agent, or that the two have "manifest[ed] assent to the principal's right to control the agent." *U.S. v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010).

EMM has not alleged that in the absence of Signal Peak's involvement in coal mining in Montana, Pinesdale would conduct those activities.  Where a plaintiff alleges only that a defendant "indirectly owns or holds the stock of" subsidiaries, this "does not, without more, convert [the subsidiary] into general agents . . . for jurisdictional purposes." *Unocal*, 248 F.3d at 930.  Indeed, Pinesdale is not in the business of operating coal mines or selling coal.

Further, as explained above, EMM has also not alleged *any* facts from which Pinesdale's "control" of Signal Peak may be inferred for purposes of jurisdiction via "alter ego" *or* "agency" theories.  EMM's bare assertion that Pinesdale controls

or supervises Signal Peak does not confer jurisdiction on an agency basis. *Id.* at 930.[6]

### 2.   The Court Cannot Exercise "Specific Jurisdiction" Over Pinesdale

EMM accurately states the three-part inquiry utilized in the 9th Circuit to determine specific jurisdiction over foreign entities (Opp. at 32), but has not shown that Pinesdale is subject to specific jurisdiction under this test – *i.e.*, that the causes of action arise out of or are substantially related to Pinesdale activity in Montana. *Unocal*, 248 F.3d at 923.

### a.   EMM's Conspiracy Theory Does Not Confer Specific Jurisdiction Over Pinesdale

EMM urges the Court to accept the "conspiracy theory" of personal jurisdiction, arguing that a "growing number of courts around the country have recognized the conspiracy theory as satisfying the Due Process Clause." Opp. at 34, n.7.  But EMM elides that the Ninth Circuit has expressed that "[t]here is a great deal of doubt surrounding the legitimacy of this conspiracy theory of

---

[6] EMM cites *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011) as authority that Pinesdale "controls" Signal Peak, but omits that in *Bauman* a comprehensive written agreement served as a manifestation of mutual assent to the principal's control.  There is no such evidence here.

personal jurisdiction." *Chirila v. Conforte*, 47 Fed. Appx. 838, 842 (9th Cir. 2002).

EMM also omits that the district courts in the Ninth Circuit have rejected the theory. *See, e.g., Steinke v. Safeco Ins. Co. of Am.*, 270 F. Supp. 2d 1196, 1200 (D. Mont. 2003) (stating that neither the Ninth Circuit, Montana district courts or Montana Supreme Court recognize the conspiracy theory of jurisdiction); *Karsten Mfg. Corp. v. U.S. Golf Ass'n*, 728 F. Supp. 1429, 1434 (D. Ariz. 1990); *Ecodisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1089 (C.D. Cal. 2010); *Ukrvaktsina v. Olden Group, LLC*, No. 10-6297, 2011 WL 5244679, at *9 (D. Or. Oct. 30, 2011).

Further, "[t]he cases [that have discussed this theory] are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough" to establish a conspiracy theory basis for personal jurisdiction. *Chirla*, 47 Fed. Appx. at 843. Even if the theory applied here, EMM "must allege <u>specific</u> facts warranting the inference that the defendants were members of the conspiracy, and come forward with some definite evidentiary facts to connect <u>the defendant</u> with transactions occurring in [the forum state]." *Mansour v. Superior Court*, 38 Cal. App. 4th 1750, 1759-60 (Cal. Ct. of App. 4th Dist. 1995) (emphasis added). "[T]o establish such jurisdiction requires

more than mere allegations that defendants operate as a business association."
*Steinke*, 270 F. Supp. 2d at 1200 (emphasis added).

EMM offers no such facts concerning Pinesdale, and only asserts that the alleged conspiracy was "wholly-centered in Montana and directed at Montana;" that the "efforts" to deprive EMM of royalties were "centered in Montana;" and that Montana was the "locus of the conspiracy."  Opp. at 34-35, 39.  But these are conclusions.  They are not found in the pleading, and are unsupported by what *is* alleged in the pleading.  All EMM *has* alleged is an investment for profit by Gunvor, through Pinesdale, in Global Holding – all foreign companies – which transaction is not alleged to have occurred in Montana, and which agreement is not alleged to be governed by Montana law.  This does not establish any jurisdictional ground.

### b.   EMM Has Not Shown That Pinesdale Has Purposefully Availed Itself Of The Forum

Because EMM's claims against Pinesdale lie in tort, it must specifically show <u>Pinesdale's</u> "purposeful direction" at Montana by demonstrating that <u>Pinesdale</u> 1) committed an intentional act; 2) which was expressly aimed at the forum state; and 3) which caused harm, the brunt of which was suffered and which Pinesdale knows is/was likely to be suffered in the forum state.  *Ukrvaktsina*, 2011 WL 5244679, at *12.  Notably, "[a]n allegation that a particular defendant caused or contributed to an effect in the forum state, by itself, is insufficient, even if it is

8

foreseeable that the defendant's conduct would have an effect in the forum." *In re Western States Wholesale Natural Gas Antitrust Litigation*, 605 F. Supp. 2d 1118, 1140 (D. Nev. 2010) (citation omitted).

EMM's pleading evidences <u>no</u> specific allegations that demonstrate "acts" by which Pinesdale has purposefully availed itself of the protections and benefits of Montana. EMM argues that Pinesdale "knew [it was] interfering with the Coal Lease," and that Signal Peak "would be called to answer for its breaches in Montana." Opp. at 41. EMM also vaguely argues that Gunvor and Pinesdale "run a business based in Montana." Opp. at 32. But these are just more conclusory assertions, without detail, that presume some activity and/or illicit scienter by Pinesdale – highlighting (again) the house of cards that are EMM's claims against Pinesdale. Indeed, personal jurisdiction is not appropriate simply on the basis of a parent-subsidiary relationship. *Transure, Inc. v. Marsh & McClennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985). And conclusory allegations are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, there are no allegations that permit the inference that Pinesdale has done some act by which it purposefully invoked the benefits and protections of the laws of Montana.

Because EMM has failed to introduce this requisite evidence of purposeful activities directed toward Montana <u>by Pinesdale</u>, it also cannot establish that its

claims "arise out" any such activities.   Accordingly, specific jurisdiction over Pinesdale cannot lie.  *Unocal*, 248 F.3d at 924.

### c.   The Exercise Of Specific Jurisdiction Over Pinesdale Would Be Unreasonable

Even if the Court were to find that EMM's pleading satisfies the first two prongs of "the Schwarzenegger test" (Opp. at 32), Pinesdale should not – simply by virtue of an alleged investment in Global Holding and/or Signal Peak – be "haled into [a Montana court] solely as a result of random, fortuitous or attenuated contacts . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985).  This would be unreasonable.  *Fed. Leasing*, 618 F. Supp. at 494.  As described above, Pinesdale has not "purposefully interjected" itself into Montana.  *Id*.  Additionally, the burden on Pinesdale – a Delaware company with its sole member a Swiss corporation – to defend in Montana is substantial.  *Id*, at 495.  Further, there is a significant conflict with the sovereignty of Montana in the case of Pinesdale, a Delaware corporation, which is made more profound given Pinesdale's absence of alleged contacts with Montana.  *Id*.  Because the remaining factors cannot be said to be dispositive of jurisdiction here – just as in *Fed. Leasing* – it follows that it would be unreasonable to exercise jurisdiction over Pinesdale here.  *Id*. at 495-496.

### 3.   Jurisdictional Discovery Is Not Warranted

EMM's inadequate pleading and arguments do not justify expensive and time-consuming discovery of Pinesdale, a foreign entity.  *Butcher's Union Local*

*No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (refusal of jurisdictional discovery appropriate where plaintiffs "state only that they 'believe' discovery will enable them to demonstrate sufficient" contacts with forum for personal jurisdiction); *Pebble Beach Co. v. Caddy*, 453 F.3d 11511, 1160 (9th Cir. 2006) (attenuated, bare allegations of jurisdiction do not merit discovery); *accord Unocal*, 248 F.3d at 924.   EMM's loose allegations of "stonewalling" do not change this principle – those allegations are not levied at Pinesdale.

## B.   EMM Fails to State A Claim For Tortious Interference Against Pinesdale

The Opposition attempts to explain how the pleadings have shown "something more than facts which, at the most, would breed only a suspicion that [EMM] has the right to relief . . ." *Laeupple v. May*, No. DV-08-166, 2009 Mont. Dist. LEXIS 52, at *3 (D. Mont. Jan. 8, 2009) (emphasis added).   But EMM's conclusions do not show that the actions of Pinesdale were "intended" to specifically injure EMM, and were conducted with the "unlawful" purpose of causing damage to EMM "without right or justification."   Tortious interference cannot be inferred from the fact of a legitimate investment, or from EMM's conclusory statements that the transaction was "unlawful," or "designed" to injure EMM.   *Taylor v. Anaconda Fed. Credit Union*, 550 P.2d 151, 154 (1976) ("malice" is "an essential element" of this tort, and cannot be "presumed and

cannot be inferred from the commission of a lawful act"); *Iqbal*, 556 U.S. at 679 (conclusions are disentitled to the presumption of truth).[7]

Moreover, *if* the Court were to disregard the corporate forms, and presume Pinesdale's "control" of Signal Peak, then Pinesdale could not have interfered with the Lease because Pinesdale and Signal Peak would not be "strangers" to that contract. In other words, if the Court has jurisdiction over Pinesdale because, as EMM asserts, Signal Peak is merely the "shell" of Pinesdale, then Pinesdale is not a stranger to the Lease and a tortious interference claim must fail because it may only be committed by strangers to the contract. *Bolz v. Myers*, 651 P.2d 606, 609 (Mont. 1982).

## C. EMM Fails to State A Claim For Civil Conspiracy Against Pinesdale

Having failed to state a claim for tortious interference against Pinesdale, EMM's conspiracy claim fails as well. *Hughes v. Pullman*, 36 P.3d 339, 343 (Mont. 2001) (conspiracy claim requires a valid underlying tort claim). No other tort claim is asserted against Pinesdale.

---

[7] EMM relies on *Colstrip Energy Ltd. P'ship v. Thomason Mech. Corp.*, No. CV-03-150-BLG-RFC, 2006 WL 6843711 (D. Mont. Oct. 30, 2006), to advance its argument for a relaxed pleading standard for tortious interference claims. However, *Colstrip* was decided before *Twombly*, and is therefore irrelevant to the analysis of EMM's tortious interference claim.

EMM's conspiracy claim also fails because the alleged object of the alleged "conspiracy" was lawful – an investment for profit by Pinesdale, effected by lawful means.   Even if the transactions were effected to also avoid higher royalty payments to EMM, this is not "unlawful."   No action for civil conspiracy lies where the defendants' actions were lawful. *Duffy v. Butte Teachers Union, N. 332, AFL-CIO*, 541 P.2d 1199, 1202 (Mont. 1975).   EMM's *ipse dixit* that Pinesdale's actions are "patently unlawful," (Opp. at 25), is not enough. *Lovaas v. U.S. Forest Serv.*, No. CV-07-72-BU-SHE, 2008 WL 3187793, at *2 (D. Mont. Aug. 6, 2008).

## D.   **EMM Fails To State A Claim For Unjust Enrichment Against Pinesdale**

EMM has not made a prima facie showing that states a claim for unjust enrichment in Montana. *Bell Builders, Inc. v. Bell Enterprises Partnership*, No. DV-00-648, 2002 Mont. Dist. LEXIS 2747, at *15 (D. Mont. Apr. 3, 2002) (reciting elements of unjust enrichment).

Again, EMM offers only its conclusion that Pinesdale, specifically, has "retain[ed] portions of the royalties owed to EMM." Opp. at 22. Moreover, EMM has not shown "an absence of a justification for the enrichment and the impoverishment." Indeed, EMM cannot make this showing – the conduct of Pinesdale was entirely justified by a lawful goal (*i.e.*, to invest and make money).

EMM also ignores that it *has* a legal remedy for its claim of diminished royalties – the only injury it has articulated. EMM contends that its Lease with

13

Signal Peak is irrelevant to the unjust enrichment claim against Pinesdale, and that *Guschausky* does not stand for the principle that that "unjust enrichment is unavailable 'if there is an enforceable contract governing' the issue in dispute." Opp. at 23.   But EMM incorrectly argues that the *Guschausky* court  limited its interpretation to instances where there was a contract "between the parties" (*Id.*); and also incorrectly argues that *McKesson HBOC, Inc. v. N.Y.S. Common Ret. Fund, Inc.*, 339 F.3d 1087, 1092 (9th Cir. 2003), contradicts *Guschausky*.   In *McKesson*, the court simply found that application of the *Guschausky* principle to an unjust enrichment claim <u>under Delaware law</u> would "re-write Delaware third-party beneficiary law." *Id.*  In fact, *McKesson* is more fairly read as "recognizing that an equitable remedy is unnecessary where a legal remedy for the same wrong is available under state law, even if against a different party." *Stratton v. Am. Med. Security, Inc.*, 266 F.R.D. 340, 354 (D. Az. 2009).   This is exactly the point – EMM has an adequate remedy at law via the resolution of its dispute with Signal Peak.

**CONCLUSION**

For the foregoing reasons, Pinesdale  requests that the Counterclaims against

it be dismissed, with prejudice.

DATED this 29th day of August, 2012.


_____/s/ James H. Goetz_____
GOETZ, GALLIK & BALDWIN, P.C
**Attorney for Counterclaim Defendant**
**Pinesdale LLC**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2) of the Federal Rules of Civil Procedure, the undersigned certifies that the word count calculated by Word is 3,211 words (including footnotes and excluding the caption and Certificates of Service and Compliance).

DATED this 29th day of August, 2012.


_____/s/ James H. Goetz_____
GOETZ, GALLIK & BALDWIN, P.C.
**Attorney for Counterclaim Defendant**
**Pinesdale LLC**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on August 29, 2012, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| <u>1-9</u> | CM/ECF |
| ____ | Hand Delivery |
| ____ | Mail |
| ____ | Overnight Delivery Service |
| ____ | Fax |
| ____ | E-Mail |

1.    Ross W. McLinden, Esq.
      MOULTON BELLINGHAM PC
      27 N. 27th Street, Ste. 1900
      Billings, MT 59103
      **Attorney for Defendants and Counterclaim Plaintiffs Eastern Montana Minerals, Inc. and Musselshell Resources, LLC**

2.    Christopher R. Belmonte, Esq.
      SATTERLEE STEPHENS BURKE & BURKE LLP
      230 Park Avenue
      New York, New York 10169
      **Attorney for Defendants and Counterclaim Plaintiffs Eastern Montana Minerals, Inc. and Musselshell Resources, LLC**

3.    Dai Wai Chin Feman, Esq.
      SATTERLEE STEPHENS BURKE & BURKE LLP
      230 Park Avenue
      New York, New York 10169
      **Attorney for Defendants and Counterclaim Plaintiffs Eastern Montana Minerals, Inc. and Musselshell Resources, LLC**

4.   A. Clifford Edwards, Esq.
     EDWARDS, FRICKLE & CULVER
     1648 Poly Drive, Suite 206
     Billings, MT 59102
     **Attorney for Plaintiff and Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC**

5.   Triel D. Culver, Esq.
     EDWARDS, FRICKLE & CULVER
     1648 Poly Drive, Suite 206
     Billings, MT 59102
     **Attorney for Plaintiff and Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC**

6.   A. Christopher Edwards, Esq.
     EDWARDS, FRICKLE & CULVER
     1648 Poly Drive, Suite 206
     Billings, MT 59102
     **Attorney for Plaintiff and Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC**

7.   John W. Edwards, Esq.
     EDWARDS, FRICKLE & CULVER
     1648 Poly Drive, Suite 206
     Billings, MT 59102
     **Attorney for Plaintiff and Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC**

8.      Bruce A. Americus, Esq.
        BUCHANAN INGERSOLL & ROONEY PC
        One Oxford Centre, 20th Floor
        301 Grant Street
        Pittsburgh, PA 15219
        **Attorney for Plaintiff and Counterclaim Defendants Signal Peak
        Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.;
        FirstEnergy Generation Corp.; Boich Companies, LLC; WMB
        Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global
        Mining Holding Company, LLC**

9.      Matthew F. Burger, Esq.
        BUCHANAN INGERSOLL & ROONEY PC
        One Oxford Centre, 20th Floor
        301 Grant Street
        Pittsburgh, PA 15219
        **Attorney for Plaintiff and Counterclaim Defendants Signal Peak
        Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.;
        FirstEnergy Generation Corp.; Boich Companies, LLC; WMB
        Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global
        Mining Holding Company, LLC**


                        _____/s/ James H. Goetz_____
                        GOETZ, GALLIK & BALDWIN, P. C.