A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
Telephone:  (406) 256-8155
Facsimile:  (406) 256-8159

Bruce A. Americus *(Pro Hac Vice)*
Matthew F. Burger *(Pro Hac Vice)*
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone:  (412) 562-8800

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC,<br><br>  Plaintiff,<br><br>vs.<br><br>EASTERN MONTANA MINERALS, INC., and MUSSELSHELL RESOURCES, LLC,<br><br>  Defendants and<br>  Counterclaim Plaintiffs,<br><br>vs.<br><br>SIGNAL PEAK ENERGY, LLC; FIRSTENERGY CORP.; FIRSTENERGY VENTURES CORP.; | Case Number: CV 12-55-BLG-RFC<br><br>**REPLY IN SUPPORT OF COUNTERCLAIM DEFENDANTS PINESDALE LLC AND GUNVOR GROUP LTD.'S MOTION FOR PROTECTIVE ORDER**<br><br>*Filed by Signal Peak Energy, LLC, FirstEnergy Corp., FirstEnergy Ventures Corp., FirstEnergy Generation Corp., Boich Companies, LLC, WMB Marketing Ventures, LLC, Global Coal Sales Group, LLC, and Global Mining Holding Company, LLC* |

FIRSTENERGY GENERATION CORP.; GUNVOR GROUP, LTD.; PINESDALE LLC; BOICH COMPANIES, LLC; WMB MARKETING VENTURES, LLC; GLOBAL COAL SALES GROUP, LLC; and GLOBAL MINING HOLDING COMPANY, LLC,

   Counterclaim Defendants.

# REPLY IN SUPPORT OF COUNTERCLAIM DEFENDANTS PINESDALE LLC AND GUNVOR GROUP LTD.'S MOTION FOR PROTECTIVE ORDER

## ARGUMENT

  Rule 26(c) is clear: this Court has broad discretion to decide when a protective order is appropriate. Fed. R. Civ. P. 26; *see also Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (trial courts have "broad discretion" in determining when a protective order is appropriate); *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (a district court can issue a protective order to stay discovery when it is convinced that a plaintiff will not be able to state a claim for relief). The party (or parties) seeking a protective order must show "good cause" why such protection should issue (see Rule 26(c)), and, in their Motion for a Protective Order [Doc. Nos. 95-96] ("Motion" or "MPO"), Gunvor

2

and Pinesdale have done so. No argument that EMM[1] offers in its Response to the Motion [Doc. No. 103] (the "Response") undermines the appropriateness of a protective order here.

I. **EMM's Argument For Discovery Despite Pending Motions To Dismiss Based On Lack Of Personal Jurisdiction Has No Legal Support.**

EMM argues that discovery should proceed despite the numerous dispositive Motions to Dismiss filed by the Counterclaim Defendants challenging this Court's jurisdiction over them. *See* Response at 6. EMM's argument suffers from multiple flaws.

First, despite EMM's assertion to the contrary, discovery is not required to resolve Rule 12 Motions. As EMM surely must know, the well-established standard of review for such motions obviates the need for discovery by allowing a court to assume as true all facts in the pleading being challenged.

Second, EMM has completely failed to meet its burden of pleading sufficient contacts between Boich, FE, FEV, Global Holding, or WMB on the one hand, and the State of Montana on the other. By contrast, in support of their Motions to Dismiss, each of these Counterclaim Defendants has submitted an affidavit setting forth each entity's lack of contacts with Montana. EMM's failure

---

[1] All capitalized terms shall have the meanings ascribed to them in the Joinder to the Motion for Protective Order [Doc. No. 97] that the Joining Defendants filed on September 14, 2012.

to meet its pleading burden on the jurisdictional issues does not somehow mean that it now gets the benefits of discovery.  EMM's failure instead renders the Counterclaims subject to dismissal under controlling Ninth Circuit law.

The case law on point is clear:  once the Counterclaim Defendants submitted affidavits setting forth specific facts regarding their lack of contacts with Montana, EMM was required to come forward with some evidence to establish personal jurisdiction over each Counterclaim Defendant; it could not "rely solely on the complaint to establish jurisdictional facts."  *See Nucal Foods, Inc. v. Quality Egg LLC*, No. S-10-3105, 2012 WL 3528162, *5 (E.D. Cal. Aug. 15, 2012) (citing *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "If the defendant presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and declarations."  *WeRI World Network v. Cyberlynk Network Inc.*, No. 11-195, 2011 WL 4412181, *2 (D. Haw. Sept. 20, 2011) (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002)).

Here, EMM had its chance to present this additional jurisdictional proof in its response to the Motions to Dismiss, but it squandered that opportunity.  This failure compels the dismissal of claims against the pertinent Counterclaim Defendants, and also compels the resolution of the instant Motion in Counterclaim Defendants' favor.  Indeed, denying the instant Motion and letting EMM engage in

discovery would have the perverse effect of giving EMM the chance to investigate claims that should be dismissed for EMM's own lack of diligence and resultant pleading failures.[2]

Thus, as to all of EMM's claims with jurisdictional deficiencies, the MPO should be granted.[3] Such an order would ensure that, should the Motions to Dismiss be granted, the parties will not in the meantime engage in potentially needless discovery involving numerous Counterclaim Defendants who have no nexus to the state of Montana, the Coal Supply Agreement, or the calculation or payment of Royalties to EMM.

---

[2] EMM's attempt to plead new "facts" in its brief regarding the actions of Gunvor and SPE – *see* Response at page 7 – to support jurisdiction is inappropriate. Joining Defendants hesitate to dignify this attempt with a response, but note that EMM's allegation is actually false, and that Gunvor has not yet served an "Answer" in this action. Further, EMM's baseless "we did the best we could" argument (*id*.) is also not a valid basis to ignore EMM's pleading failures or its failures to respond to the affidavits supporting Counterclaim Defendants' Motions to Dismiss on the basis of personal jurisdiction. Thus, this argument cannot support EMM's opposition to the instant Motion.

[3] EMM's reliance on *FTC v. AMG Services, Inc.*, throughout the Response is also misguided. There, a Nevada federal court repeatedly noted that when a motion to dismiss raises jurisdictional issues – as the Motions to Dismiss here have – a stay of discovery is warranted. 2012 WL 3730561, *3-*5 (D. Nev. Aug. 28, 2012) (citing cases). Further, and as EMM admits in its Response (*see* n. 1), the court also noted that the Ninth Circuit has not specified what factors should be applied to decide when to stay discovery while a motion to dismiss is pending. *Id.* at *4.

## II. Allowing Discovery to Proceed Prior to Resolution of the Rule 12(b)(6) Issues Would be Unfair, Inefficient, and Costly.

EMM's second argument is that discovery should proceed against all Counterclaim Defendants even though each one has filed a Rule 12(b)(6) Motion seeking dismissal of the Counterclaims. As the Counterclaim Defendants have repeatedly noted, allowing discovery in this matter before the Motions to Dismiss are decided would be premature, burdensome and inefficient.

In support of this point, EMM first cites to Rule 1 of the Federal Rules of Civil Procedure's emphasis on "the just, speedy, and inexpensive determination of every action." *See* Response at 4. This is a curious citation for EMM, since Rule 1 supports the request for a protective order. Such an order would ensure that EMM not be given the benefit of discovery for conclusory allegations that fall woefully short of the *Iqbal/Twombly* pleading standard.[4] Rule 1's dictum therefore supports the grant of a protective order, not its denial.

The scope of discovery will depend almost entirely on the resolution of the Motions to Dismiss. Once the Motions to Dismiss are resolved, Joining Defendants believe that there will remain before the Court a contract-based action between SPE and EMM that will depend entirely on the interpretation of the Coal Lease. Such an action will involve a significantly narrower and far less

---

[4] As set forth in Gunvor/Pinesdale's Brief in Support of the Motion at pages 8-9, federal courts will issue protective orders where the resolution of motions to dismiss may cause discovery to be unnecessary.

6

burdensome and costly discovery process. To move forward with discovery at this point would therefore be an exercise in superfluousness and futility – precisely what Rule 1 seeks to avoid. Moreover, the protective order requested by the Counterclaim Defendants is of limited duration, despite EMM's efforts to paint it as monumental. *See* Response at 9-10.

EMM further argues that a preliminary "peek" at the Motions to Dismiss will not "convince" the Court that EMM has failed to state claims against the Counterclaim Defendants. Response at 8. But EMM misconstrues the standard under which the Court should evaluate the Motions to Dismiss in its "peek" at the merits. To determine whether a protective order is appropriate, the Court should consider the Motions to Dismiss "to see if on [their] face there appears to be an immediate and clear possibility that [they] will be granted." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D. Cal. 2000). A "clear possibility" of success does not require "a 'fifty percent chance' of success;" rather, as is the case here, if the underlying motions to dismiss have "some degree of foundation in the law and there is a possibility that defendant may prevail," a protective order is appropriate. *Id.* at 287; *accord Ameritel Inns v. Moffat Bros. Plastering, L.C.*, No. CV 06-359-S-EJL, 2007 U.S. Dist. LEXIS 44900, at *12 (D. Idaho June 20, 2007).

EMM also makes a generalized fairness argument based on the *Landis* decision, stating that EMM's "continuing" injury justifies the commencement of

discovery. *See* Response at 10. In fact, EMM's injury, if it exists at all, is entirely quantifiable. EMM is already being paid hundreds of thousands of dollars a month in Royalties, and if this Court agrees with EMM's interpretation of the Coal Lease, EMM will be completely protected and can be made whole by an additional payment from SPE. To allow EMM to turn a case that depends entirely on the interpretation of a contract between two parties into a wide-ranging expedition into the records of numerous companies that are not parties to the contract nor properly before this Court would be beyond unfair.

## III. <u>Even Allowing Limited Discovery Would Unduly Burden the Counterclaim Defendants.</u>

EMM's fallback position is that even if this Court were to grant the protective order as to certain parties and certain Counterclaims, discovery should nevertheless go forward on at least three counts against SPE. But that course of action would still impose large burdens and expenses on all of the Counterclaim Defendants.

Say, for example, that this Court were to allow discovery of SPE on a limited basis. EMM would almost certainly notice depositions of SPE representatives. All of the Counterclaim Defendants (including foreign entities) would have to prepare for and attend those depositions. If some or all of those Counterclaim Defendants were subsequently dismissed, then the depositions would have been an unneeded expense for those entities. Even if the depositions were

limited to only certain counts against SPE, the deponents would have to be brought back a second time to answer questions on any claims that survive the Motions to Dismiss. Either way, engaging in discovery at this stage would be woefully inefficient and unduly costly to all of the Counterclaim Defendants.[5]

## **CONCLUSION**

For the foregoing reasons, the Joining Defendants request that the MPO be granted.

---

[5] This burden would fall particularly hard on entities with no connection to this case. For example, Gunvor or Boich (to take two examples) would send attorneys to every deposition of SPE representatives, and those attorneys would have to prepare for each deposition as if their clients were remaining in the case. But if the Motions to Dismiss are resolved in Gunvor's favor or Boich's favor, then all of that effort would be for naught.

DATED this 8th day of October, 2012.

    /s/ Triel D. Culver
A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
Telephone:  (406) 256-8155
Facsimile:  (406) 256-8159

Bruce A. Americus *(Pro Hac Vice)*
Matthew F. Burger *(Pro Hac Vice)*
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone:  (412) 562-8800

*Attorneys for Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(d)(2)(e) of the U.S. District Court for the District of Montana, I certify that this document is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Word is 1,789.

Dated this 8th day of October, 2012.

<div style="text-align: right;">

/s/ Triel D. Culver
A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
Telephone:  (406) 256-8155
Facsimile:  (406) 256-8159

Bruce A. Americus *(Pro Hac Vice)*
Matthew F. Burger *(Pro Hac Vice)*
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone:  (412) 562-8800

*Attorneys for Counterclaim Defendants Signal Peak Energy, LLC; FirstEnergy Corp.; FirstEnergy Ventures Corp.; FirstEnergy Generation Corp.; Boich Companies, LLC; WMB Marketing Ventures, LLC; Global Coal Sales Group, LLC; and Global Mining Holding Company, LLC*

</div>