A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
Telephone:  (406) 256-8155
Facsimile:  (406) 256-8159

Bruce A. Americus *(Pro Hac Vice)*
Matthew F. Burger *(Pro Hac Vice)*
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone:  (412) 562-8800

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC, | Case Number: CV 12-55-BLG-RFC |
| Plaintiff and Counterclaim Defendant, | **ANSWER TO COUNTERCLAIMS** |
| vs. | |
| EASTERN MONTANA MINERALS, INC., and MUSSELSHELL RESOURCES, LLC, | |
| Defendants and Counterclaim Plaintiffs. | |

## ANSWER TO COUNTERCLAIMS

Plaintiff/Counterclaim Defendant Signal Peak Energy ("Signal Peak"),

by and through its undersigned counsel, hereby files this Answer to the

Counterclaims filed by Defendants' Eastern Montana Minerals, Inc. and

Musselshell Resources, LLC (collectively, "EMM") as follows.

## THE PARTIES

1.    Signal Peak lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Easter Montana Minerals, Inc. is a Delaware corporation with its principal place of business in Greenwich, CT and therefore denies that allegation.

2.    Signal Peak lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Musselshell Resources, LLC is a limited liability company with members domiciled in Connecticut, Massachusetts, New York, Maryland, Rhode Island, Minnesota, Tennessee, Florida, the United Kingdom, and the Netherlands, and therefore denies that allegation.

3.    Denied.

4.    The allegations contained in Paragraph 4 are directed to a former Counterclaim Defendant, FirstEnergy Corp. ("FE") that was dismissed from this case.  As a result, no response from Signal Peak is necessary or appropriate. To the extent that a response is otherwise required, the allegations are denied.

5.    The allegations contained in Paragraph 5 are directed to a former Counterclaim Defendant, FirstEnergy Ventures Corp. ("FEV") that was dismissed from this case.  As a result, no response from Signal Peak is necessary or appropriate.  To the extent that a response is otherwise required, the allegations are denied.

6.    The allegations contained in Paragraph 6 are directed to a former Counterclaim Defendant, FirstEnergy Generation Corp. ("FEG") that was dismissed from this case.  As a result, no response from Signal Peak is necessary or appropriate.  To the extent that a response is otherwise required, the allegations are denied.

7.    The allegations contained in Paragraph 7 are directed to a former Counterclaim Defendant, Boich Companies, LLC ("Boich") that was dismissed from this case.  As a result, no response from Signal Peak is necessary or appropriate.  To the extent that a response is otherwise required, the allegations are denied.

8.    The allegations contained in Paragraph 8 are directed to a former Counterclaim Defendant, WMB Marketing Ventures, LLC ("WMB") that was dismissed from this case.  As a result, no response from Signal Peak is necessary or appropriate.  To the extent that a response is otherwise required, the allegations are denied.

9.    The allegations contained in Paragraph 9 are directed to a former Counterclaim Defendant, Gunvor Group, Ltd. ("Gunvor") that was dismissed from this case.  As a result, no response from Signal Peak is necessary or appropriate.  To the extent that a response is otherwise required, the allegations are denied.

10.    The allegations contained in Paragraph 10 are directed to a former Counterclaim Defendant, Pinesdale LLC ("Pinesdale") that was dismissed from

this case.  As a result, no response from Signal Peak is necessary or appropriate. To the extent that a response is otherwise required, the allegations are denied.

11.    The allegations contained in Paragraph 11 are directed to a former Counterclaim Defendant, Global Coal Sales Group, LLC ("Global Sales") that was dismissed from this case.  As a result, no response from Signal Peak is necessary or appropriate.  To the extent that a response is otherwise required, the allegations are denied.

12.    The allegations contained in Paragraph 12 are directed to a former Counterclaim Defendant, Global Mining Holding Company, LLC ("Global Holding") that was dismissed from this case.  As a result, no response from Signal Peak is necessary or appropriate.  To the extent that a response is otherwise required, the allegations are denied.

## JURISDICTION AND VENUE

13.    The allegations contained in Paragraph 13 constitute conclusions of law regarding jurisdiction to which no response is required.

14.    The allegations contained in Paragraph 14 are directed to former Counterclaim Defendants FE, FEV, FEG, Boich, WMB, Gunvor, Pinesdale, Global Sales, and Global Holding, all of which were dismissed from this case. As a result, no response from Signal Peak is necessary or appropriate.  To the extent that a response is otherwise required, the allegations are denied.

15.    The allegations contained in Paragraph 15 constitute conclusions of law regarding jurisdiction to which no response is required.

## STATEMENT OF FACTS

### The Coal Lease

16.    Admitted.

17.    Admitted.

18.    Signal Peak lacks knowledge or information sufficient to form a belief as to the truth of the allegation that BMCP changed its name to Eastern Montana Minerals, Inc. on July 31, 2008, and therefore denies that allegation.

19.    Admitted.

20.    Denied.

21.    Admitted in part and denied in part.  The Coal Lease is a written document that speaks for itself.  The allegations contained in Paragraph 21 regarding Signal Peak's obligations under the Coal Lease constitute conclusions of law to which no response is required.  The remaining allegations of Paragraph 21 are denied.

22.    Admitted in part and denied in part.  The Coal Lease is a written document that speaks for itself.  The allegations contained in Paragraph 22 regarding the calculation of Royalties under the Coal Lease, and their purpose, constitute conclusions of law to which no response is required.  The remaining allegations of Paragraph 22 are denied.

23.    Admitted in part and denied in part.  The Coal Lease is a written document that speaks for itself.  The remaining allegations in Paragraph 23

constitute conclusions of law to which no response is required.

     24.    Admitted in part and denied in part.  It is admitted that coal companies attempt to market and sell their coal.  The remaining allegations of Paragraph 24 are denied.

     25.    Denied.

     26.    Admitted.

     27.    Admitted.  By way of further response, Signal Peak states that the execution of the CSA, while not referenced in the Coal Lease, in fact satisfied a condition in the May and June 2008 Term Sheets entered into by EMM's predecessor, which set forth terms of the acquisition of the Signal Peak Mine from EMM's predecessor.  In addition, the CSA was included as a closing document when the 2008 acquisition occurred and EMM's predecessor had access to the CSA and knew its terms and conditions.

     28.    Admitted.

     29.    Signal Peak lacks knowledge or information sufficient to form a belief as to EMM's expectations as set forth in Paragraph 29 and therefore denies those allegations.

     30.    Signal Peak lacks knowledge or information sufficient to form a belief as to EMM's expectations as set forth in Paragraph 30 and therefore denies those allegations.  Signal Peak also denies that it engaged in any activities in order to avoid the payment of Royalties to EMM.

     31.    It is admitted that Signal Peak has paid Royalties to EMM and has

sent monthly statements reflecting such Royalties since 2008 as properly calculated under the Coal Lease.

32.   Signal Peak lacks knowledge or information sufficient to form a belief as to FE's public statements as set forth in Paragraph 32 and therefore denies those allegations.  The remaining allegations in Paragraph 32 are denied.

### The Gunvor Transaction

33.   Denied.

34.   Denied.

35.   Denied.

36.   Denied.

37.   Denied.

38.   Signal Peak lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what documents EMM has seen as set forth in Paragraph 38 and therefore denies those allegations.  The remaining allegations in Paragraph 38 are denied.

39.   Admitted in part and denied in part.  The press release referenced in Paragraph 39 is a written document that speaks for itself.  The remaining allegations in Paragraph 39 are denied.

40.   Admitted in part and denied in part.  The press release referenced in Paragraph 40 is a written document that speaks for itself.  The remaining allegations in Paragraph 40 are denied.

41.   Admitted in part and denied in part.  The Form 10-Q referenced in

Paragraph 41 is a written document that speaks for itself.  The remaining allegations in Paragraph 41 are denied.

42.    Admitted in part and denied in part.  The press release referenced in Paragraph 42 is a written document that speaks for itself.  The remaining allegations in Paragraph 42 are denied.

43.    Admitted in part and denied in part.  Signal Peak admits that EMM requested an audit of all sales of coal by Signal Peak from the Mine.  By way of further response, Signal Peak states that it has fully complied with that request. The remaining allegations of Paragraph 43 are denied.

44.    Signal Peak lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what EMM has relied upon as set forth in Paragraph 44 and therefore denies those allegations.

45.    Admitted in part and denied in part.  The Form 10-K referenced in Paragraph 45 is a written document that speaks for itself.  The remaining allegations in Paragraph 45 are denied.

46.    Denied.

47.    Denied.  By way of further response, Signal Peak states that all Royalties have been properly accounted for and paid under the Coal Lease.

48.    Denied.  By way of further response, Signal Peak states that all Royalties have been properly accounted for and paid under the Coal Lease.

49.    Denied.

50.    Admitted in part and denied in part.  The Coal Lease is a written

document that speaks for itself.  The remaining allegations in Paragraph 50 are denied.

51.    Admitted in part and denied in part.  The Form 10-K referenced in Paragraph 51 is a written document that speaks for itself.  The remaining allegations in Paragraph 51 are denied.

52.    Denied.  By way of further response, Signal Peak states that all Royalties have been properly accounted for and paid under the Coal Lease.

53.    Denied.  By way of further response, Signal Peak states that all Royalties have been properly accounted for and paid under the Coal Lease.

54.    Denied.

55.    Denied.

56.    Denied as stated.  By way of further response, Signal Peak states that all Royalties have been, and will continue to be, properly accounted for and paid under the Coal Lease.

57.    Denied.

58.    Denied.  In connection with the aforesaid audit, Signal Peak provided EMM with all documents that it was entitled to receive under the Coal Lease.

59.    Admitted in part and denied in part.  The Coal Lease is a written document that speaks for itself.  The remaining allegations in Paragraph 59 are denied.

60.    Admitted in part and denied in part.  The Coal Lease is a written

document that speaks for itself.  The remaining allegations in Paragraph 60 are denied.

## COUNT 1: BREACH OF CONTRACT

61.    Signal Peak repeats and realleges its responses to Paragraphs 1 through 60 as if fully set forth herein.

62.    Admitted.

63.    The allegations contained in Paragraph 63 constitute conclusions of law to which no response is required.

64.    Denied as stated.  By way of further response, the Coal Lease is a written document that speaks for itself.

65.    Denied.

66.    Admitted.

67.    Denied as stated.  By way of further response, Signal Peak states that all Royalties have been properly accounted for and paid under the Coal Lease.  The remaining allegations in Paragraph 67 are denied.

68.    Denied.

69.    Denied as stated.  By way of further response, Signal Peak states that all Royalties have been properly accounted for and paid under the Coal Lease.

70.    Denied as stated.  EMM has alleged that Signal Peak has improperly accounted for and paid Royalties under the Coal Lease, which Signal Peak has denied.  By way of further response, Signal Peak states that all

Royalties have been properly accounted for and paid under the Coal Lease.

71.    Signal Peak lacks knowledge or information as to what written notice EMM is referring to and therefore denies the allegations in Paragraph 71. By way of further response, Signal Peak states that all Royalties have been properly accounted for and paid under the Coal Lease.

72.    Denied.

73.    Denied.

74.    Denied.

## COUNT 2: BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING

75.    Signal Peak repeats and realleges its responses to Paragraphs 1 through 74 as if fully set forth herein.

76.    Admitted.

77.    The allegations contained in Paragraph 77 constitute conclusions of law to which no response is required.

78.    Denied.

79.     Denied.

80.    Denied.

81.    Denied.

82.    Denied.

83.    Denied.

## COUNT 3: ACTUAL FRAUD

84.    Signal Peak repeats and realleges its responses to Paragraphs 1

through 83 as if fully set forth herein.

85.    Denied.

86.    Denied.

87.    Denied.

88.    Denied.

89.    Denied.  By way of further response, Signal Peak states that it has made no misrepresentations to EMM regarding Royalties under the Coal Lease. Rather, all Royalties have been properly accounted for and paid under the Coal Lease.

90.    Denied.  By way of further response, Signal Peak states that it has made no misrepresentations to EMM regarding Royalties under the Coal Lease. Rather, all Royalties have been properly accounted for and paid under the Coal Lease.

91.    Denied.  By way of further response, Signal Peak states that it has made no misrepresentations to EMM regarding Royalties under the Coal Lease. Rather, all Royalties have been properly accounted for and paid under the Coal Lease.

92.    Denied.

93.    Denied.

## COUNTS 4, 5, 6: TORTIOUS INTERFERENCE, UNJUST ENRICHMENT, AND CIVIL CONSPIRACY

94-119.  Counts 4, 5, and 6 have been dismissed with prejudice per the Court's February 7, 2013 Order.  As a result, no response is necessary or

appropriate.

## COUNT 7:  BREACH OF FIDUCIARY DUTY

120.  Signal Peak repeats and realleges its responses to Paragraphs 1 through 119 as if fully set forth herein.

121.  Signal Peak lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding EMM's trust and confidence in Signal Peak as contained in Paragraph 121 and therefore denies those allegations.  By way of further response, Signal Peak expects all Royalties to be properly accounted for and paid under the Coal Lease.

122.  Denied.

123.  Denied.

124.  Denied.

125.  Denied.

126.  Denied.

## COUNT 8:  PUNITIVE DAMAGES

127.  Signal Peak repeats and realleges its responses to Paragraphs 1 through 126 as if fully set forth herein.

128.  Denied.

129.  Denied.

130.  Denied.

## COUNT 9:  DECLARATORY JUDGMENT (§27-8-202, MCA)

131.  Signal Peak repeats and realleges its responses to Paragraphs 1

13

through 130 as if fully set forth herein.

132.   The allegations contained in Paragraph 132 constitute conclusions of law to which no response is required.  To the extent that a response is required, Signal Peak denies that EMM is entitled to any of the relief sought in Paragraph 132.

133.   Signal Peak admits that a declaration from this Court regarding EMM's and Signal Peak's duties and obligations under the Coal Lease will clarify and settle the legal relations between the parties.  By way of further response, Signal Peak denies that EMM is entitled to any of the relief or damages that it seeks in this matter.

134.   The allegations contained in Paragraph 134 constitute conclusions of law to which no response is required.

135.   Admitted.

### AFFIRMATIVE DEFENSES

136.  The counterclaims fail to state a claim, in whole or in part, upon which relief can be granted.

137.  Signal Peak acts in accordance with its obligations under the Coal Lease and has discharged and continues to discharge those obligations appropriately.

138.  Signal Peak has satisfied all of its obligations under the Coal Lease. Accordingly, EMM's counterclaims are barred by the doctrine of performance.

139.  The counterclaims are barred, in whole or in part, by the doctrine of

waiver.

140.  The counterclaims are barred, in whole or in part, by the doctrine of estoppel.

141.  The counterclaims are barred, in whole or in part, by the doctrine of laches.

142.  The counterclaims are barred, in whole or in part, by the doctrine of unclean hands.

143.  The counterclaims are barred, in whole or in part, by the economic loss doctrine.

144.  The counterclaims are barred, in whole or in part, by the doctrine of accord and satisfaction.

145.  EMM's fraud claim fails for lack of particularity.

146.  Signal Peak hereby provides notice that it intends to rely upon such other defenses as may become available or apparent during discovery in this case and reserves the right to amend its Answer to Counterclaims to assert any such additional defenses.

DATED this 20th day of February, 2013.

> /s/ A. Clifford Edwards
> A. Clifford Edwards
> Triel D. Culver
> A. Christopher Edwards
> John W. Edwards
> EDWARDS, FRICKLE & CULVER
> 1648 Poly Drive, Suite 206
> Billings, MT 59102
> Telephone:  (406) 256-8155
> Facsimile:  (406) 256-8159

15

Bruce A. Americus *(Pro Hac Vice)*
Matthew F. Burger *(Pro Hac Vice)*
BUCHANAN INGERSOLL & ROONEY
PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone:  (412) 562-8800

*Attorneys for Plaintiff/Counterclaim*
*Defendant Signal Peak Energy, LLC*