A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS, FRICKLE & CULVER
1648 Poly Drive, Suite 206
Billings, MT 59102
Telephone:  (406) 256-8155
Facsimile:  (406) 256-8159

Bruce A. Americus *(Pro Hac Vice)*
Samuel W. Braver *(Pro Hac Vice)*
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone:  (412) 562-8800

*Attorneys for Signal Peak Energy, LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC,<br><br>　　　Plaintiff and Counterclaim<br>　　　Defendant,<br><br>　　　vs.<br><br>EASTERN MONTANA MINERALS,<br>INC., and MUSSELSHELL<br>RESOURCES, LLC,<br><br>　　　Defendants and<br>　　　Counterclaim Plaintiffs. | Case Number: CV 12-55-BLG-RFC<br><br><br>**PRELIMINARY PRETRIAL**<br>**STATEMENT** |

COMES NOW Plaintiff Signal Peak Energy, LLC ("Signal Peak"), by and through its counsel of record, Edwards, Frickle & Culver and Buchanan Ingersoll & Rooney PC, and pursuant to the Court's Order dated February 20, 2013, and Rule 16.2(b)(1) of the Local Rules of Procedure of the United States District Court for the District of Montana, respectfully submits the following Preliminary Pretrial Statement.

## A.      Brief Factual Outline of the Case.

In May and June of 2008, Bull Mountain Coal Mining, Inc. ("BMCM") and Bull Mountain Coal Properties, Inc. ("BMCP") (together, "Bull Mountain Companies") signed Term Sheets with Empire Energy, LLC ("Empire").  Those Term Sheets described the significant business terms of a pending acquisition by a then-unnamed assignee of Empire – which ultimately became Signal Peak – of 80% of BMCM's equity and BMCP's assets relating to a coal mine and coal properties located in Yellowstone and Musselshell Counties ("Acquisition"), now known as the Signal Peak Mine.

As set forth in the Term Sheets, prior to the pending Acquisition, Empire was required to enter into a term sheet satisfactory to the Bull Mountain Companies with FirstEnergy for a long-term coal supply contract that met certain of the Bull Mountain Companies' conditions as to term of the coal supply contract, price of the coal to be purchased, and quantity of coal to be purchased annually

("Condition Precedent No. 1").  In addition, prior to the Acquisition, BMCP and BMCM were to enter into a coal lease agreement providing for royalty payments to BMCP ("Condition Precedent No. 2").

The Acquisition was consummated on July 16, 2008, with 40% of the interests in the Signal Peak Mine being owned by an affiliate of Empire, 40% of the interests in the Mine being owned by FirstEnergy Ventures Corp., and 20% retained by BMCP's successor, EMM[1].  The Acquisition was successfully consummated because Condition Precedent No. 1 was satisfied when Plaintiff entered into a Coal Sales Agreement ("CSA") with FirstEnergy Generation Corp. ("FEG") meeting all of the requirements of EMM's predecessor that were set forth in the Term Sheets.  The CSA gave FEG the unilateral right to resell coal that it purchased under the CSA to any third party, without restriction.  EMM was fully aware of the terms of the CSA prior to its execution and it was part of the closing documents delivered at the closing of the Acquisition.

At no point, either prior to or following the execution of the CSA, when EMM was still a 20% owner of Signal Peak, did EMM ever claim that FEG's purchase of Signal Peak's coal produced at the Mine pursuant to the CSA was improper or inconsistent with the agreements between the parties.  In point of fact,

---

[1] EMM remained as a 20% owner for approximately one year and then was bought out by the other owners.

it was EMM that specifically required that Signal Peak enter into the CSA as Condition Precedent No. 1.

The Acquisition was also able to occur because Condition Precedent No. 2 was satisfied when EMM and Signal Peak entered into a Coal and Coalbed Methane Lease and Water Rights Conveyance ("Coal Lease") that provided for the payment of Royalties to EMM, based on the Gross Sales Price received by Signal Peak from the sale of the coal (to FEG under the CSA). Again, prior to and following the execution of the Coal Lease, EMM never claimed that the Royalties it received under the Coal Lease – which lease was specifically contemplated by Condition Precedent No. 2 – were improperly calculated.

For several years, EMM accepted Royalty payments from Signal Peak based on the Gross Sales Price under the CSA, without incident or question. Nevertheless, it now claims that it is not receiving the correct Royalties under the Coal Lease. EMM's new position is that the Royalties it receives should be based on the price of third party sales and not the price Signal Peak is paid under the CSA. This position appears to be based on EMM's incorrect assumptions concerning an October 2011 transaction with a third party.

EMM's position is simply incorrect. The CSA was insisted upon by EMM in the first place and there can be no debate that it was then, and continues to be, an arm's length transaction. The CSA unambiguously gave FEG the right to resell

PRELIMINARY PRETRIAL STATEMENT – PAGE - 4

coal that it purchased under the CSA to any third party, without restriction.  In fact, once FEG took title to the coal, it could do whatever it wanted with it – it was not required to consume the coal and it could sell it or give it away if it wanted.  Third party transactions three years after the Acquisition, and two years after EMM's 20% interest was acquired, did not make the CSA non-arm's length.  Thus, Signal Peak seeks a declaration that it has been properly calculating and paying the Royalties to EMM under the Coal Lease and that the Royalties to EMM thereunder should not be based on third party sales.

**B.    Issues Concerning Jurisdiction and Venue.**

Signal Peak is not aware of any issues concerning jurisdiction or venue.

**C.    Factual Basis of Plaintiff's Claims.**

Please see Sections A. and D. of this Pretrial Statement.

**D.    Legal Theory and Factual Basis of Plaintiff's Claims and Defendants' Counterclaims.**

**Signal Peak's Count I:  Declaratory Judgment.**  The Coal Lease is binding on both EMM and Signal Peak.  The Royalties that Plaintiff pays EMM have been properly calculated and paid and should not be based on third party sales of coal mined by Signal Peak.

Signal Peak has fulfilled all of its duties and obligations under the Coal Lease.  The declaration that Signal Peak seeks will clarify and settle the legal relations between the parties and will terminate and afford relief from the

controversy giving rise to this proceeding.  Furthermore, Signal Peak's requested declaration is proper here because there is an actual, immediate and justiciable controversy existing between the parties.

**EMM's Count 1:  Breach of Contract**.  As set forth above, Signal Peak has fulfilled all duties and obligations under the Coal Lease.  Moreover, all Royalties have been properly accounted for and paid under the Coal Lease.  As a result, the Coal Lease had not been breached.

**EMM's Count 2:  Breach of the Covenant of Good Faith and Fair Dealing**.  The prerequisite for Count 2 is a breach of contract.  The Coal Lease has not been breached because all Royalties have been properly accounted for and paid thereunder.  Count 2 therefore fails as a matter of law.

**EMM's Count 3:  Actual Fraud**.  Signal Peak has made no misrepresentations to EMM regarding Royalties under the Coal Lease.  Rather, all Royalties have been properly accounted for and paid under the Coal Lease.  Thus, EMM has no valid fraud claim against Signal Peak.

**EMM's Count 7:  Breach of Fiduciary Duty**.  No fiduciary relationship exists between Signal Peak and EMM, which are mere parties to a contract – the Coal Lease.  EMM has no basis on which to place any special confidence or trust in Signal Peak, and never placed any such special confidence or trust in Signal

Peak.  Moreover, all Royalties have been properly accounted for and paid under the Coal Lease.  EMM therefore has no fiduciary duty claim against Signal Peak.

**EMM's Count 8:  Punitive Damages**.  Punitive damages are unavailable for breach of contract and Signal Peak has made no misrepresentations to EMM regarding Royalties under the Coal Lease.   Rather, all Royalties have been properly accounted for and paid under the Coal Lease.  Thus, EMM has no fraud claim against Signal Peak, and no corresponding supportable claim for punitive damages.

**EMM's Count 9:  Declaratory Judgment**.  A declaratory judgment is appropriate in this case.  This Court should declare that the Royalties that Signal Peak has paid to EMM under the Coal Lease have been properly calculated and paid and should not be based on third party sales of coal mined by Signal Peak.  To calculate Royalties based on subsequent downstream sales of the coal is contrary to the Coal Lease and the clear intent of the parties thereto.

### E.      Computation of Damages.

Signal Peak does not seek damages but instead seeks a declaration from this Court.   As a result, Signal Peak has no alleged damages to be computed, but requests its reasonable attorneys' fees and the costs of this suit.

### F.      The Pendency or Disposition of Related Litigation.

Signal Peak is not aware of any pending or related cases at this time.

**G.      Stipulation of Fact and the Parties' Understanding of What Law Applies.**

Plaintiff is prepared to make the following stipulations regarding facts and law at this time:

(1)      Signal Peak Energy, LLC is a Delaware limited liability company with a place of business at 100 Portal Drive, Roundup, MT 59072-6856.

(2)      Eastern Montana Minerals, Inc. is a Delaware corporation with its principal place of business at 115 East Putnam Avenue, Greenwich, CT 06830-5643.

(3)      Musselshell Resources, LLC is a limited liability company.

(4)      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1441, as well as Article IX of the Coal Lease.

(5)      Jurisdiction is proper under 28 U.S.C. §§ 1332 and 1441.

(6)      The Bull Mountain Companies executed Term Sheets with Empire in May and June of 2008 which set forth Condition Precedents Nos. 1 and 2.

(7)      A copy of the CSA was provided to BMCP, now EMM, prior to and at the consummation of the Acquisition.

(8)      At the closing of the Acquisition, the CSA was delivered to EMM.

(9)      EMM, as a 20% owner of Signal Peak, had access to the CSA and sales information regarding coal mined by Signal Peak.

(10)      Signal Peak and EMM are the parties to the Coal Lease.

(11)     The Coal Lease is governed and construed in accordance with the Laws of the State of Montana "for all purposes."

(12)     The parties have agreed to waive trial by jury.

(13)     An actual, immediate, and justiciable controversy exists between the parties with respect to the calculation of Royalties under the Coal Lease.

(14)     Since 2008, Signal Peak has correctly calculated and paid Royalties to EMM.

**H.     Joinder of Parties and Amendment of Pleadings.**

Signal Peak does not expect to add additional parties or to amend its Amended Complaint or its Answer to EMM's Amended Answer with Counterclaims. Counsel for the parties conferred regarding deadlines while drafting the Joint Discovery Plan, but were unable to reach agreement on a deadline to add parties and amend pleadings.  Plaintiff requests that this Court set such a deadline.

**I.     Controlling Issues of Law Which Plaintiff Anticipates Presenting for Pretrial Disposition.**

Plaintiff's Count I (for Declaratory Judgment) may be suitable to pretrial disposition on summary judgment.  Plaintiff reserves the right to present additional controlling issues of law should the need arise as the discovery process continues and as litigation strategies are developed by the parties.

**J.      Status of Any Settlement Discussions and Prospects for Compromise of the Case.**

There are no ongoing settlement discussions.  Plaintiff requests that the Court require a confidential settlement conference prior to trial pursuant to 16.5(c)(1) of the Local Rules of Procedure United States District Court for the District of Montana.

**K.      Suitability of Special Procedures.**

None at this time.

DATED:  April 2, 2013                             Respectfully submitted,

                                                                 EDWARDS, FRICKLE & CULVER
                                                                 /s/ Triel D. Culver
                                                                 A. Clifford Edwards
                                                                 Triel D. Culver
                                                                 A. Christopher Edwards
                                                                 John W. Edwards
                                                                 1648 Poly Drive, Suite 206
                                                                 Billings, MT 59102

                                                                 Bruce A. Americus (*Pro Hac Vice*)
                                                                 Samuel W. Braver (*Pro Hac Vice*)
                                                                 BUCHANAN INGERSOLL &
                                                                 ROONEY PC
                                                                 301 Grant Street, 20th Floor
                                                                 Pittsburgh, PA 15219

                                                                 *Attorneys for Plaintiff*