Ross W. McLinden, *Esq*.
MOULTON BELLINGHAM PC
27 N. 27th St. Ste. 1900
P.O. Box 2559
Billings, MT 59103
Telephone: (406) 248-7731
ross.mclinden@moultonbellingham.com

Christopher R. Belmonte, *Esq*. (Admitted *Pro Hac Vice*)
Dai Wai Chin Feman, Esq. (Admitted *Pro Hac Vice*)
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, Suite 1130
New York, NY 10169
Telephone: (212) 818-9200
cbelmonte@ssbb.com
dchinfeman@ssbb.com

*Attorneys for Defendants and Counterclaim Plaintiffs Eastern Montana Minerals, Inc. and Musselshell Resources, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**(Billings Division)**

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC,<br><br>  Plaintiff and<br>  Counterclaim Defendant,<br><br> -vs-<br><br>EASTERN MONTANA MINERALS, INC., and MUSSELSHELL RESOURCES, LLC,<br><br>  Defendants and<br>  Counterclaim Plaintiffs. | Case No.: 1:12-cv-00055-RFC<br><br><br><br><br>**DEFENDANTS' PRELIMINARY PRETRIAL STATEMENT** |

Defendants/Counterclaim Plaintiffs Eastern Montana Minerals, Inc. and Musselshell Resources, LLC (collectively "EMM") hereby submit the following Preliminary Pretrial Statement pursuant to Local Rule 16.2(b)(1) of the Local Rules of Procedure of the United States District Court for the District of Montana.

## A.   BRIEF FACTUAL OUTLINE OF THE CASE.

In July 2008, EMM entered into a coal lease (the "Coal Lease") with Plaintiff Signal Peak Energy, LLC ("SPE"), which provides for the payment of royalties by SPE to EMM on all coal "mined, shipped, and sold" from the Signal Peak Mine (the "Mine") based on the "Gross Sales Price" received on such sales by SPE.  If such sales are not made "at arms' length," however, the Coal Lease provides that royalties are to be based on "the price received at or about the same time by [SPE] in comparable arms' length sales."

Since 2008, SPE has paid royalties to EMM and has sent monthly statements to EMM reflecting such royalties.  SPE has represented to EMM that all sales of coal from the Mine have been and continue to be made to FirstEnergy Generation Corp. ("FGCO") under a coal sale agreement (the "CSA").

In or around October 2011, Gunvor Group, Ltd. bought a one-third interest in SPE ("the Gunvor Transaction").  Shortly thereafter, in a series of perplexing and contradictory press releases and SEC filings that belied SPE's representations to EMM, SPE and its attorneys publicly announced plans to dramatically increase

the future output of the Mine and sell coal to foreign markets. SPE, Gunvor, and their attorneys also announced a substantial long-term coal purchase agreement between SPE and Gunvor. In addition, the parent of FGCO reported that the terms of the CSA were amended. Further, the parent announced that FGCO would resell all coal purchased under the CSA to SPE's affiliate, Global Coal Sales Group, LLC ("GCSG").

Upon learning of the Gunvor Transaction, EMM became concerned about its effect on SPE's coal sales and thus EMM's royalties. To allay its concerns, EMM sought information regarding the Gunvor Transaction, including an audit of all sales of coal from the Mine. The Coal Lease expressly authorizes such audit.

In response to the audit and even in its Motion to Dismiss, SPE has refused to provide EMM with information regarding affiliated buyers or sellers of coal from the Mine (other than FGCO), any amendments to the CSA, and any agreements or documents relating to the Gunvor Transaction. After months of withholding information, SPE told EMM that it "concluded that having any further discussion at this point would be unavailing" and peremptorily commenced a declaratory judgment action in Montana District Court seeking:

> [A] declaration … that the royalties EMM is entitled to … be calculated based on the Gross Sale Price under the CSA, and not calculated based on subsequent downstream sales of Signal Peak coal made by … any third party.

EMM removed this case to this Court and filed an Answer, along with nine Counterclaims against SPE and its affiliated entities whom EMM believes to be involved in SPE's coal sales to buyers other than FGCO. After this Court's ruling on a multitude of Motions to Dismiss, only SPE and EMM remain as parties to litigate SPE's Declaratory Judgment Action and the following Counterclaims against SPE:

 (1) Breach of Contract (Count 1);

 (2) Breach of the Covenant of Good Faith and Fair Dealing (Count 2);

 (3) Actual Fraud (Count 3);

 (4) Breach of Fiduciary Duty (Count 7);

 (5) Punitive Damages (Count 8); and

 (6) EMM's own Declaratory Judgment Action (Count 9).

**B.**   **ISSUES CONCERNING JURISDICTION & VENUE.**

EMM affirms that venue and jurisdiction are proper in and by this Court.

**C.**   **FACTUAL BASIS FOR EACH CLAIM OR DEFENSE.**

The factual basis of each of EMM's defenses is as follows:

1. **The Amended Complaint fails to state a claim upon which relief may be granted**. EMM submits that SPE is not entitled to the declarations it seeks. This defense is explained in more detail below, as it relates to each specific defense asserted by EMM. EMM is also asserting this defense in order to avoid

waiving any of its defenses in this matter, and if it becomes evident that this defense needs to be withdrawn as discovery proceeds, EMM will withdraw this defense when appropriate. The facts and legal basis for this defense will be more fully developed during discovery, and EMM will supplement its disclosures and/or discovery responses accordingly.

2. **The allegations or causes of action set forth in the Amended Complaint are barred by the doctrine of unclean hands**. *See Cowan v. Cowan,* 2004 MT 97, 321 Mont. 13, 89 P.3d 6 ("'parties must not expect relief in equity, unless they come into court with clean hands.'"). SPE has come into this Court with unclean hands since it continues to pay royalties based upon sales that are not made "at arms' length." Moreover, it refuses to provide EMM with information regarding buyers of coal from the Mine (other than FGCO), any amendments to the CSA, or any agreements or documents relating to the Gunvor Transaction. The facts and legal basis for this defense will be more fully developed during discovery, and EMM will supplement its disclosures and/or discovery responses accordingly.

3. **The allegations or causes of action set forth in the Amended Complaint are barred by the doctrine of waiver, laches, and/or estoppel**. EMM is asserting this defense in order to avoid waiving any of its defenses in this matter, and if it becomes evident that this defense needs to be withdrawn as

discovery proceeds, EMM will withdraw this defense when appropriate. The facts and legal basis for this defense will be more fully developed during discovery, and EMM will supplement its disclosures and/or discovery responses accordingly.

4. **The allegations or causes of action set forth in the Amended Complaint are barred by the doctrine of fraud and misrepresentation**. SPE has falsely represented that it is paying EMM royalties based on arms' length coal transactions. To benefit from sales at prices higher than those paid by FGCO under the CSA, SPE is in fact circumventing the Coal Lease's royalty provisions by orchestrating a chain of paper transactions amongst a web of related entities. SPE has made these false representations and withheld information so that EMM would not challenge the amount of the royalty payments, and EMM's reliance on SPE's misrepresentations has resulted in EMM receiving less in royalties than it is entitled to receive. *See In re Estate of Kindsfather,* 2005 MT 51, 326 Mont. 192, 108 P.3d 487 (2005); *Novak v. Anaconda Sch. Dist., Sch. Dist. No. 10, Deer Lodge County*, 2011 WL 2489760 (D. Mont. 2011).

5. **The allegations or causes of action set forth in the Amended Complaint are barred by the doctrine of lack of consideration and/or payment**. SPE continues to pay royalties based upon sales that are not made "at arms' length." EMM agreed to the Coal Lease's royalty provision with the understanding that it would benefit from increases in the price of coal sold by SPE.

SPE benefits from re-selling coal through affiliates at higher prices than those received in its initial sales to FGCO under the CSA. As such, SPE has not fully performed under the Coal Lease by failing to provide EMM with the full amount of consideration for which it bargained.

6. **SPE has breached the Coal Lease**. SPE continues to pay royalties based upon sales that are not made "at arms' length." Moreover, it refuses to provide EMM with information regarding affiliated buyers and sellers of coal from the Mine other than FGCO, any amendments to the CSA, or any agreements or documents relating to the Gunvor Transaction. The facts and legal basis for this defense will be more fully developed during discovery, and EMM will supplement its disclosures and/or discovery responses accordingly.

7. **SPE has violated the implied covenant of good faith and fair dealing in the Coal Lease**. SPE continues to pay royalties based upon sales that are not made "at arms' length." It has constructed a web of paper transactions to circumvent the Coal Lease's royalty provision and deprive EMM from the benefit of the true arms'-length price received by SPE (or its affiliated sales company) for coal sales. Moreover, SPE refuses to provide EMM with information regarding affiliated buyers and sellers of coal from the Mine other than FGCO, any amendments to the CSA, or any agreements or documents relating to the Gunvor Transaction. The facts and legal basis for this defense will be more fully

developed during discovery, and EMM will supplement its disclosures and/or discovery responses accordingly.

8. **SPE has been unjustly enriched at the expense of Defendants**. In light of the dismissal of EMM's Unjust Enrichment Counterclaim (Count 5), EMM withdraws this Affirmative Defense.

9. **SPE has breached its fiduciary duty to EMM**. EMM trusted and placed special confidence in SPE to carry out its obligations under the Coal Lease in good faith (including paying royalties to EMM based on all coal sold from the Mine), such that EMM may benefit from increases in the prices of coal sold by SPE. SPE owes a fiduciary duty to EMM by virtue of this special relationship. SPE has breached its fiduciary duty, violated EMM's trust and confidence, and acted against EMM's interests by channeling coal sales through paper transactions with FGCO and another affiliate, GCSG, to avoid paying royalties to EMM based on arms' length transactions. SPE has also violated its fiduciary duty by refusing to provide information, despite EMM's audit right, regarding affiliated buyers and sellers of coal from the Mine other than FGCO, any amendments to the CSA, or any agreements or documents relating to the Gunvor Transaction. *See Candelaria Industries v. Occidental Petroleum Corp.*, 662 F.Supp. 1002 (D. Nev. 1984); *Gliko v. Permann*, 2006 MT 30, 331 Mont. 112, 130 P.3d 155 (Mont. 2006).

10. **An award of supplemental relief to SPE under Mont. Code Ann. § 27-8-313 is neither necessary nor proper in this case**. *See Trustees of Indiana University v. Buxbaum*, 2003 MT 97, 315 Mont. 210, 69 P.3d 663.

11. **SPE is not statutorily or otherwise entitled to attorneys' fees or costs**.  Montana follows the general American Rule that a party in a civil action is not entitled to attorneys' fees absent a specific contractual or statutory provision awarding fees to the prevailing party.  Since SPE should not prevail here, it is not entitled to fees and costs. Should SPE be successful on its claim and/or defense to certain counterclaims, SPE's attorneys' fees should be apportioned accordingly, and it should only be entitled to recover attorneys' fees for those claims which specifically allow them and on which it ultimately prevails.  In addition, any award of attorneys' fees must be proportionate to any surviving claims.

12. **The declaratory relief sought will not clarify all of the parties' duties and obligations with respect to royalties payable under the Coal Lease**. EMM has brought its own Declaratory Judgment claim to address not only the royalty payment issue, but also, SPE's refusal to provide EMM with information requested pursuant to the audit provision of the Coal Lease.  *See* Mont. Code Ann. § 27-9-101, *et seq.*  Moreover, with respect to royalties, the declaratory relief sought by EMM does not address several scenarios, such as where SPE (1) sells coal from the Mine directly to entities other than FGCO (2) sells coal from the

Mine to FGCO under an agreement other than the CSA (3) amends the CSA in a non-arms'-length manner, or (4) sells coal through any other paper transactions amongst affiliates that allow SPE to sell coal downstream at higher prices than those on which it bases EMM's royalties.

13. **Defendants reserve the right to rely on any additional defenses to the claims for relief set forth in the Amended Complaint that become available or apparent during discovery proceedings in this action, and Defendants respectfully reserve the right to amend this Answer for purposes of asserting such defenses**. This defense speaks for itself, and it is asserted simply to preserve EMM's defenses, as they may become applicable.

The factual basis of each of EMM's Counterclaims is as follows:

1. For EMM's Breach of Contract claim (Count 1), see Section C(6) above.

2. For EMM's Breach of the Covenant of Good Faith and Fair Dealing claim (Count 2), see Section C(7) above.

3. For EMM's Actual Fraud claim (Count 3), see Section C(4) above.

4. For EMM's Breach of Fiduciary Duty claim (Count 7), see Section C(9) above.

5. In regard to EMM's Punitive Damages (Count 8), SPE knew and/or intentionally disregarded the fact that the Gunvor Transaction was structured to

create a high probability of injury to EMM by paying EMM less royalties than the amount to which it is entitled. SPE deliberately proceeded to act in conscious and/or intentional disregard of, or with indifference to, the high probability of injury to EMM, by consummating the Gunvor Transaction and channeling coal sales through affiliates to avoid paying the full amount of royalties due to EMM. *See* Mont. Code Ann. § 27-1-221.

6. For EMM's own Declaratory Judgment Action (Count 9), see Section C(12) above.

D. **LEGAL THEORIES UNDERLYING CLAIMS & DEFENSES.**

Legal theories for EMM's claims and defenses are set forth in the factual responses above.

E. **COMPUTATION OF DAMAGES.**

Given the nature of the EMM's claims and lack of information provided by SPE, EMM is unable to compute its alleged damages at this time. By way of example, however, and using SPE's production levels in mid-2012, every $1 change in the sale price of coal results in approximately $720,000 per year in difference of royalties due to EMM. At 15 million tons of coal per year (*i.e.*, the future production of the Mine forecasted by SPE and its affiliates in various press releases), the difference in annual royalties per every $1 change in the sale price of coal equates to roughly $1,200,000 in damages to EMM.

In addition to the damages related to unpaid royalties, EMM seeks punitive damages to the maximum extent allowed ($10,000,000 in accordance with Mont. Code Ann.§ 27-1-220(3)), along with recovery of its costs, attorneys' fees, and interest as allowed by contract and under Montana law.

EMM will contest any of SPE's claims for damages, including, but not limited to, attorneys' fees.

F. **PENDENCY OF ANY RELATED STATE OR FEDERAL LITIGATION.**

EMM is not presently aware of any pending state or federal ligation related to this case. EMM does believe, however, that SPE may be (or has been) the subject of investigation by the U.S. Department of Interior and/or Montana Department of Revenue concerning SPE's coal sales. EMM is unaware of whether any administrative matters are pending as a result of those investigations.

G. **PROPOSED STIPULATION OF FACT & LAW.**

Other than the admissions made by the Parties in their respective Answers, EMM does not foresee any potential stipulations of fact or law to which the parties would likely agree at this early stage of litigation.

H. **PROPOSED DEADLINES RELATED TO JOINDER OR AMENDMENT.**

EMM anticipates addressing this deadline at the upcoming Preliminary Pretrial Conference set for April 9, 2013.

I.  **IDENTIFICATION OF CONTROLLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION.**

EMM is unaware at this time of any specifically controlling issues of law in this matter, but EMM anticipates filing dispositive motions on one or more of its counterclaims.  EMM will file any such motions in accordance with the deadlines set by this Court.  In the event this action is not disposed of by way of a ruling on dispositive motions, EMM expects to file appropriate pretrial motions pursuant to this Court's Scheduling Order.

J.  **STATUS OF SETTLEMENT DISCUSSIONS AND PROSPECTS FOR COMPROMISE.**

The parties have not discussed the possibility of early resolution of this case, but EMM is certainly open to any such discussions, and it is amenable to this Court ordering mandatory mediation with the Magistrate Judge (provided the parties are given ample time to conduct necessary discovery beforehand).

K.  **SUITABILITY OF SPECIAL PROCEDURES.**

EMM does not believe the case is suitable for any special procedure.

**DATED** this 2nd day of April, 2013.

    MOULTON BELLINGHAM PC

    By: /s/ Ross W. McLinden
        ROSS W. McLINDEN
        27 N. 27th St., Ste. 1900
        P.O. Box 2559
        Billings, MT 59103

        Christopher R. Belmonte
        Dai Wai Chin Feman
        SATTERLEE STEPHENS BURKE
        & BURKE LLP
        230 Park Avenue
        New York, New York 10169
        (Admitted *Pro Hac Vice*)

*Attorneys for Defendants and Counterclaim Plaintiffs Eastern Montana Minerals, Inc. and Musselshell Resources, LLC*

4812-6934-1971, v. 6